342 P.2d 871

George H. CONN, Plaintiff and Appellant,

v.

Rich WHITMORE, Defendant and
Respondent.

No. 8927.

Supreme Court of Utah.

Aug. 11, 1959.

Howe & Howe, Murray, for appellant.

Rawlings, Wallace, Roberts & Black, Salt Lake City, for respondent.

CROCKETT, Chief Justice.

George H. Conn, a resident of Illinois, brought this action in the district court of Salt Lake County, Utah, against Rich Whitmore, a resident of Utah, based upon a judgment for $816.11 recovered in the Circuit Court of Stephenson County, Illinois. He claimed "full faith and credit" for the judgment which would preclude any defense upon the merits,[1] but not a challenge to the jurisdiction of the court which entered it.[2] The defendant interposed the latter defense which was sustained by the trial court. Plaintiff appeals.

The primary question here is whether a transaction involving the defendant's purchase of two horses from the plaintiff constitutes "the transaction of any business" in Illinois within the meaning of paragraphs 16 and 17, Chapter 110, Illinois Revised Statutes, 1955:

"16(1) Personal service of summons may be made upon any party outside of the State * * * who has submitted to the jurisdiction of the courts of this State * * *

"17(1) Any person * * * who in person or through an agent does any of the acts hereinafter enumerated thereby submits * * * to the jurisdiction * * * as to any cause of action arising from the doing of said acts:

"(a) The transaction of any business with this State * * *."

Plaintiff is a veterinarian and horse fancier who raises and sells Arabian horses at Freeport, Illinois. In February of 1955 he mailed to defendant a mimeographed sheet listing for sale certain Arabian horses, in-

1. Art. IV, Sec. 1, U.S. Constitution; Magnolia Petroleum Co. v. Hunt, La.1943, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149, rehearing denied 321 U.S. 801, 64 S.Ct. 483, 88 L.Ed. 1088.

2. Williams v. State of North Carolina, 1945, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577; Milliken v. Meyer, 1940, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278.

252

cluding two eventually purchased by the defendant. It recited:

"Khiffraff * * * We are making very attractive price on this filly of $1,000.

"* * * Khiffah * * * bay mare, 19 years old * * * we are going to price this mare at less than her 1955 foal should be worth. The price is $750.00."

Correspondence was exchanged between the parties in the course of which the plaintiff wrote defendant that one of the three horses defendant had manifest an interest in was sold and that if he wanted the other two, he had better make up his mind. Defendant requested a friend in Illinois to look at the horses, which he did and reported favorably. Defendant then mailed a letter from Salt Lake City to plaintiff, stating that he would purchase the horses upon the terms offered, and enclosed a check for $1,000 as part payment. He dispatched an employee, Mr. Carpenter, with a trailer, who picked up the horses at the plaintiff's farm in Freeport, Illinois and delivered a check for the $750 balance. Difficulty arose because the mare was not in foal and plaintiff stopped payment on this check. Upon the basis of those facts the trial court found that the defendant did not "transact any business within the state of Illinois," within the meaning of the statute quoted.

The question as to when a court of one state may exercise jurisdiction over and render an in personam judgment against a resident of another state has proved a perplexing one. Each party argues the hardship of being forced to go to a foreign jurisdiction to defend or to enforce his rights. It is obvious that there can be no solution satisfactory to both and that one or the other must be put to such inconvenience. A fundamental difficulty inheres in the problem because of the concept that each state has independent sovereignty with authority to make and administer laws over persons and property within its borders. Reciprocal respect for such sovereignty limits one state from extending the authority of its courts into another state to subject the citizens thereof to their jurisdiction.

The basic problem is discussed and the pertinent authorities set forth by Justice Latimer in Wein v. Crockett,[3] including what is regarded as the landmark case on the subject, Pennoyer v. Neff.[4] The doctrine for which that case stands: that no judgment in personam could be rendered against a nonresident not present and served with process within the state, has undergone considerable modification. It is now generally recognized that even though a defendant is not physically present within

3. 113 Utah 301, 195 P.2d 222.

4. 95 U.S. 714, 24 L.Ed. 565.

a state, by engaging in certain activities therein may be deemed to be present and subject to the jurisdiction of its courts.

A leading case in this transition is International Shoe Company v. State of Washington.[5] A Delaware corporation, having its principal place of business in St. Louis, Missouri, operated through commission salesmen who took orders from customers in rented show rooms in the state of Washington; sent them to the company; which filled them and shipped to the customers, who remitted direct to the company. This was held by the United States Supreme Court to be "doing business" in Washington and that the company was thus subject to the jurisdiction of its courts. It was observed that " * * * due process requires only that in order to subject a defendant to judgment in personam, if he is not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " Importance was placed upon the "regular and systematic solicitation of orders * * resulting in a continuous flow of appellant's product into the state" over a period of years.

The "nonresident motorist" statutes have been upheld upon the basis that by driving upon the highways of a state a nonresident is deemed to consent to the appointment of the Secretary of State as his process agent in cases arising out of the use of the motor vehicle.[6] In addition to the driving upon the state's highways which amounts to a substantial activity therein, it is further pointed out that because of the high and constantly growing accident toll upon the highways, to which ever increasing interstate travel contributes in large measure, it is necessary and fair that citizens who suffer injuries have a practical means of redress against foreign motorists who abuse the privileges accorded them and drive negligently upon its highways. These considerations, coupled with the further fact that trial in the jurisdiction where the accident occurs is more practical and convenient because of the availability of witnesses and the applicability of local law, have been deemed sufficient foundation to justify upholding the validity of such statutes.[7]

Plaintiff also places reliance on the Illinois case of Nelson v. Miller,[8] which upholds a different section of its civil practices act than the section we are here concerned with. Subdivision (b) provides that

5. 1945, 326 U.S. 310, 66 S.Ct. 154, 158, 90 L.Ed. 95.
6. The Utah act is U.C.A. 41–12–8; for cases listed from numerous jurisdictions, see 155 A.L.R. 333, 99 A.L.R. 130, 57 A.L.R. 1239.
7. Olberding v. Illinois Central Railroad Co., 1953, 346 U.S. 338, at pages 340–341, 74 S.Ct. 83, at page 85, 98 L.Ed. 39.
8. 1957, 11 Ill.2d 378, 143 N.E.2d 673, 674.

254

the Illinois courts have jurisdiction where persons are involved in the "commission of a tortious act" within that state. Defendant, an appliance dealer in Wisconsin, by agent sold and delivered a gas stove to the plaintiff in Illinois, who was injured in helping to unload the stove. Summons was served upon the defendant in Wisconsin, who appeared specially, challenging the jurisdiction of the Illinois court and the validity of the statute. In sustaining it, the court made a comparison to the nonresident motorist statutes. It placed emphasis upon the fact that the defendant entered the state to perform his business, caused injury to a resident therein, and then attempted to withdraw to a sanctuary of safety from responsibility for his wrongful acts.

A recent significant case on this subject, McGee v. International Life Insurance Company,[9] seems to have extended the concept of a defendant being present in a state because of activity therein as far as any we are aware of. It involves a field covered by a specific California statute which provides that companies writing insurance on California residents shall be subject to the jurisdiction of its courts. The defendant insurance company, with home office in Texas, through its agent had written a contract of insurance on a California resident. It was served by registered mail in Texas as provided by the statute. Upon challenge to the jurisdiction it was held that going into the state and writing insurance upon residents of California provided a basis for holding the statute valid and justifying the California court in exercising jurisdiction over the company.

■ Even under the liberalized view the foregoing cases represent as to the prerequisites to holding one subject to personal jurisdiction of the courts of a foreign state, this requirement remains: there must be some substantial activity which correlates with a purpose to engage in a course of business or some continuity of activity in the state so that deeming the defendant to be present therein is founded upon a realistic basis and is not a mere fiction. That this is so and that a single act or transaction does not suffice unless it fits into the above pattern is well established.[10]

■ Upon any view that may be taken of the facts in the instant case, they

9. 1957, 355 U.S. 220, 78 S.Ct. 199, 2 L. Ed.2d 223.

10. Dykes, By And Through v. Reliable Furniture Co., 1954, 3 Utah 2d 34, 277 P.2d 969; McGriff v. Charles Antell Inc., 1953, 123 Utah 166, 256 P.2d 703; Western Gas Appliances, Inc. v. Servel, Inc., 1953, 123 Utah 229, 257 P. 2d 950; Industrial Commission v. Kemmerer Coal Co., 1944, 106 Utah 476, 150 P.2d 373; McCarver v. DeMornay-Bonardi Corp., 1958, 13 Misc.2d 651, 178 N.Y.S.2d 443; McClanahan v. Trans-America Ins. Co., 1957, 149 Cal.App. 2d 171, 307 P.2d 1023; Toedman v. Nooter Corp., 1957, 180 Kan. 703, 308 P.2d 138; Steinway v. Majestic Amusement Co., 9 Cir., 179 F.2d 681, 18 A.L.R.2d 179; 23 Am.Jur. 361 et seq.

cannot properly be regarded as meeting the above requirement. It is important to bear in mind that it was not the defendant Utah resident who took the initiative by going into Illinois to transact business, nor did he engage in any activity resulting in injury or damage there. Quite the contrary, it was the plaintiff resident of Illinois who proselyted for business in Utah, and whose proffer the defendant accepted here. He agreed to the terms offered and completed his contract of purchase in Utah by depositing his agreement together with his check to bind the bargain in the mail.[11]

Brief reflection will bring to mind difficulties to be encountered if the ordering of merchandise in a foreign state by mail and taking delivery through a designated carrier, whether private or common, is to be deemed "doing business" in a foreign state, which will draw one into the orbit of the jurisdiction of its courts. This would for practical purposes obliterate any protection one might have from being compelled to go to a foreign jurisdiction to defend a lawsuit. A person contemplating business in another state would have only two alternatives: either subject himself to the jurisdiction of the foreign court if any dispute arises, or refrain from doing such business. This would have a bad effect upon commerce. Mail order houses, for example, accept and fill orders from all over the country. If they could sue on their accounts in their own state where it would be highly inconvenient for out-of-state customers to defend, then forward the judgments to the jurisdictions where the customers live, demanding full faith and credit for them, this would effectively prevent the customers from presenting a meritorious defense where one existed. The ultimate result would be to dissuade customers from doing business across state lines by mail. Thus what may seem a temporary advantage to such businesses, in all likelihood would be detrimental to them and to business generally in the long run.

It is our conclusion that the trial court correctly determined that the offer was accepted in Utah and the contract entered into here; and that the correspondence through the mails between the parties plus the incidental activities of having an agent inspect the horses and taking delivery in Illinois did not amount to the "transaction of any business" within the state of Illinois sufficient to meet the requirement of their statute. We are further of the opinion that the alternative to the above holding is that if the defendant's acts here were deemed sufficient to fulfill the requirement of the Illinois statute and confer jurisdiction upon its courts, then the statute

11. Holder v. Aultman, Miller & Co., 169 U.S. 81, 18 S.Ct. 269, 42 L.Ed. 669; Adams v. Lindsell, 1 B & Ald. 681; Taylor v. Merchant's Fire Ins. Co., 9 How. 390, 13 L.Ed. 187; Patrick v. Bowman, 149 U.S. 411, 13 S.Ct. 811, 866, 37 L.Ed. 790; Burton v. United States, 202 U.S. 344, 26 S.Ct. 688, 50 L.Ed. 1057.

would not provide the "minimum contacts * * * such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice' " required under the doctrine set forth in the case of International Shoe v. State of Washington, supra [66 S.Ct. 158], and would therefore be unconstitutional as not affording due process of law.

· Affirmed. No costs awarded.

WADE, HENRIOD, McDONOUGH and CALLISTER, JJ., concur.