**LAKESIDE BRIDGE & STEEL CO.,**
**Plaintiff-Appellee,**

v.

**MOUNTAIN STATE CONSTRUCTION**
**CO., INC., Defendant-Appellant.**

**No. 78–1614.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 26, 1979.

Decided April 30, 1979.

Rehearing Denied June 8, 1979.

---

Charles W. Yeager, Charleston, W. Va., for defendant-appellant.

Peter C. Karegeannes, Quarles & Brady, Milwaukee, Wis., for plaintiff-appellee.

Before PELL and TONE, Circuit Judges, and LEIGHTON, District Judge.*

TONE, Circuit Judge.

The issue we find decisive in this contract case is whether the due process clause of the Fourteenth Amendment allows Wisconsin to assert personal jurisdiction over a nonresident corporation that has conducted no activities in Wisconsin. We hold that Wisconsin lacks jurisdiction and reverse the judgment entered in favor of plaintiff by the district court.

Plaintiff, Lakeside Bridge & Steel Company, is a Wisconsin corporation with its principal place of business in Milwaukee. Defendant, Mountain State Construction Company, is a West Virginia corporation with its principal place of business in Charleston in that state. Mountain State has no place of business, property, bank deposits, telephone, or telephone listing in Wisconsin and has never sent any officer, agent, or employee to that state; nor has it had any other kind of contact with Wisconsin except for the events that gave rise to this action.

---

* The Honorable George N. Leighton, District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

The contacts between the parties all occurred outside Wisconsin or by interstate mail or telephone. The contract in question called for Lakeside to furnish structural assemblies to Mountain State for use in constructing the outlet works for the Gathright Dam and Reservoir in Virginia. While Mountain State was preparing to bid on that project, it was visited in its offices in West Virginia by Lakeside's agents, who solicited the subcontract for the structural assemblies and left a proposal. After Mountain State had been awarded the contract for the construction of the outlet works, it accepted the proposal by preparing and mailing a purchase order addressed to Lakeside in Milwaukee. Lakeside made a change in the purchase order and returned it to Mountain State, which did not approve the change formally but did so by treating the modified purchase order as effective. Between the initial visit by Lakeside's agents and the return of the purchase order, and presumably afterward, there were telephone conversations between Lakeside in Wisconsin and Mountain State in West Virginia, some placed by Mountain State, and there was correspondence between the parties, some mailed by Mountain State.

The Lakeside proposal, incorporated by reference in the purchase order, provided that the goods were to be supplied by Lakeside "F.O.B. SELLERS PLANT MILWAUKEE, WISCONSIN with freight allowed to rail siding nearest project site." (The words in capitals were printed; the rest was typewritten.) Nothing was said otherwise about where the goods were to be manufactured.

Lakeside proceeded to manufacture the goods at its plant in Wisconsin and ship them to a siding near the project site in Virginia, where they were received by Mountain State and incorporated into the construction project. Subsequently Mountain State, asserting that the goods had been found to be defective in certain respects, withheld payment of a part of the purchase price.

Lakeside then filed this action in a Wisconsin state court to recover the unpaid balance under the contract, alleging that the court had personal jurisdiction over Mountain State under the Wisconsin long-arm statute, Wis.Stat. §§ 801.05, 801.11. Mountain State removed the action to the United States District Court for the Eastern District of Wisconsin and there filed a motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer the case to either the Southern District of West Virginia or the Western District of Virginia. The court denied the motion, and Mountain State filed an answer and counterclaim alleging breaches of the contract by Lakeside. After calling the case for trial and selecting a jury, the court declared a mistrial and ordered a continuance. Thereafter the court held an evidentiary hearing concerning only the admissibility of certain parol evidence, found the evidence inadmissible, and entered summary judgment in favor of Lakeside. This appeal followed. Although the parties argue both jurisdiction and the merits of the summary judgment, we reach only the issue of jurisdiction.

■ Before coming to the principal question to be decided, we mention two preliminary matters. First, although Congress could, if it chose, extend the jurisdiction of federal courts in any kind of case subject to the federal judicial power to persons found anywhere within the United States, it has not done so. A federal court has jurisdiction over a diversity case, such as the one at bar, only if a court of the state in which the federal court is sitting would have jurisdiction. Fed.R.Civ.P. 4(e) and 4(d)(7). *See* 2 *Moore's Federal Practice,* ¶¶ 4.41–1[1] and 4.32[2] (1978); 4 Wright & Miller, *Federal Practice and Procedure: Civil* § 1075 (1969). Thus the jurisdictional issue in the case at bar is the same as it would have been if the case had remained in the state court from which it was removed.

■ The second preliminary matter concerns our role in interpreting the Wisconsin statute. Ordinarily we would be required

to accept the interpretation given a state statute by the state's highest court. Here, however, the statute was intended by the state legislature to reach only so far as permitted by the due process clause of the Fourteenth Amendment to the United States Constitution and no further.[1] *Flambeau Plastics Corp. v. King Bee Mfg. Co.,* 24 Wis.2d 459, 464, 129 N.W.2d 237, 240 (1964). In these circumstances we are interpreting the statute, not ruling on its constitutionality, when we decide the due process question; yet we are of course not bound by the Wisconsin Supreme Court's determination of that federal question. *See Zerbel v. Federman & Co.,* 48 Wis.2d 54, 60, 179 N.W.2d 872, 875 (1970).

We have considered, with respect for that court's views on the federal due process question, the scholarly opinion for the court in *Zerbel v. Federman & Co., supra,* 48 Wis.2d 54, 179 N.W.2d 872, in which the effect of the contract in Wisconsin was the plaintiff's performance in that state of professional services which the out-of-state defendant knew would be performed there. The court, with one justice dissenting, upheld jurisdiction, adopting a flexible due process test which was said to be based on five enumerated factors[2] but which, in the end, turned on reasonableness and fairness. That case is distinguishable from this one on several grounds: There, on two or three prior occasions, similar contracts had been entered into and performed by the parties. The defendant had initiated the negotiations. The holding as to jurisdiction was based on the personal service provision of the Wisconsin long-arm statute, Wis.Stat. § 801.05(5)(a),[3] and some of the important evidence, relating to the nature and value of the services, would have to come from plaintiff and his Wisconsin records. The latter fact, if no other, makes a contract for services different from a contract for the sale of goods from the standpoint of what the Wisconsin court called the "balancing of inconveniences," *see* 48 Wis.2d at 67, 179 N.W.2d at 879. Notwithstanding all this, we recognize the possibility, if not the likelihood, that that court would reach the same conclusion in a case such as the one before us.[4] It is our duty, in any event, to decide the due process issue for ourselves.

Lakeside relies upon the following provisions of the Wisconsin long-arm statute, Wis.Stat. § 801.05:

> A Court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to § 801.11 under any of the following circumstances . . .
>
> (5) . . . In any action which:
>
> (a) Arises out of a promise, made anywhere to the plaintiff or to some 3rd party for the plaintiff's benefit, by the defendant to perform services within this state or to pay for services to be performed in this state by the plaintiff; or
>
> (b) Arises out of services actually performed for the plaintiff by the defendant within this state, or services actually performed for the defendant by the plaintiff within this state if such per-

---

1. In this respect the Wisconsin statute is like those of a number of other states, *e. g.,* Cal.Civ. Proc. Code § 410.10 (West); *Nelson v. Miller,* 11 Ill.2d 378, 143 N.E.2d 673 (1957).

2. Derived from then Judge Blackmun's opinion in *Aftanase v. Economy Baler Co.,* 343 F.2d 187, 197 (8th Cir. 1965), the five factors are the quantity of the contacts, their nature and quality, the connection of the cause of action with the contacts, the interest of the forum state, and convenience. The Wisconsin court also mentioned the interest of the defendant's home state, 48 Wis.2d at 66, 179 N.W.2d at 878–879, although little, if any, weight was given that interest.

3. As we discuss *infra,* this subsection is not applicable in the case at bar because it pertains to services rather than the manufacture of goods.

4. The court distinguished this court's decision in *Orton v. Woods Oil & Gas Co.,* 249 F.2d 198 (1957), also a professional services case, but obviously disagreed with its due process holding, stating that the decision antedated liberalizing developments in long-arm jurisdiction. 48 Wis.2d at 68–70, 179 N.W.2d at 879–880. The dissenting judge in *Zerbel* believed that the Wisconsin Supreme Court's decision would govern a case such as the one at bar. 48 Wis.2d at 71, 179 N.W.2d at 881.

formance within this state was authorized or ratified by the defendant; or

    .       .       .       .       .

(d) Relates to goods, documents of title, or other things of value shipped from this state by the plaintiff to the defendant on his order or direction;

    .   .   .

Subsections (a) and (b) are obviously inapplicable because they deal with services. In the case at bar the contract was for the sale of goods, not the rendering of services. Subsection (d), on its face, covers this case, but is subject to the due process limitation, as noted earlier.

The out-of-state defendant's contact with Wisconsin urged to be sufficient to satisfy the due process "minimum contacts" test of *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), is the ordering of goods from a Wisconsin company with knowledge that they were likely to be manufactured in Wisconsin and shipped from there. Also mentioned but less emphasized is Mountain State's use of the mail and telephone to communicate with Lakeside in Wisconsin during the negotiation and performance of the contract, and the alleged acceptance in Wisconsin of the purchase order, which Lakeside in fact modified and returned to Mountain State in West Virginia.

*International Shoe, supra,* 326 U.S. at 316, 66 S.Ct. at 158, holding that due process requires only that the defendant have such "minimum contacts" with the forum state as will make the assertion of jurisdiction over him consistent with "traditional notions of fair play and substantial justice," provides the relevant doctrine but not much assistance in solving the specific problem presented by this case. *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the next decision of the Court in this area, offers little guidance in the situation before us, because that decision was based in substantial part on the special nature of the business of insurance [5] and must be read in conjunction with the subsequent decision in *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).[6] The latter opinion does provide helpful amplification of the *International Shoe* doctrine. There the Court said,

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. [Citing *International Shoe Co.*]

357 U.S. at 253, 78 S.Ct. at 1239.

The continuing force of this pronouncement in *Hanson v. Denckla* was confirmed in *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), in which the principles of *International Shoe* were held to govern assertion by a state of *in rem*[7] as well as *in personam* jurisdiction. In the

---

**5.** The Court's analysis of the relevant contacts reads as follows:

> The contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died. It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable. When claims were small or moderate individual claimants frequently could not afford the cost of bringing an action in a foreign forum—thus in effect making the company judgment proof. Often the crucial witnesses—as here on the company's defense of suicide—will be found in the insured's locality.

355 U.S. at 223, 78 S.Ct. at 201.

**6.** In *Hanson* the Court characterized *McGee* as being a case in which the out-of-state defendant "engaged in an activity that the State treats as exceptional and subjects to special regulation." 357 U.S. at 252, 78 S.Ct. at 1239. *But see Zerbel v. Federman & Co., supra,* 48 Wis.2d at 61–62, 179 N.W.2d at 876–877.

**7.** *See* 433 U.S. at 199 & n.17, 97 S.Ct. 2569.

course of reaching that result, the Court examined *International Shoe* in some detail and then said,

> Thus, the relationship among the defendant, the forum, and the litigation, rather than the mutually exclusive sovereignty of the States on which the rules of *Pennoyer* [*v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1878)] rest, became the central concern of the inquiry into personal jurisdiction.

*Id.* 433 U.S. at 204, 97 S.Ct. at 2580. After extending the *International Shoe* test thus epitomized to *in rem* jurisdiction, the Court in *Shaffer* applied that test to preclude Delaware's exercise of *in rem* jurisdiction to sequester shares· of stock and stock options of officers and directors of a Delaware corporation. The Court held that "the statutory presence of [defendants'] property," consisting of shares and options, in the forum state was insufficient to satisfy the test when that property was neither the subject matter of the litigation nor related to the underlying cause of action. *Id.* at 213, 97 S.Ct. at 2585. The Court also held, as an alternative ground for rejecting the argument that jurisdiction was supported by Delaware's interest in supervising the management of a Delaware corporation, that this argument failed "to demonstrate that Delaware is a fair forum for this litigation." *Id.* at 214–215, 97 S.Ct. at 2586. In addition, the Court rejected the argument that the defendants performed "the acts required by *Hanson v. Denckla* " by accepting positions as officers or directors of the corporation and thereby receiving substantial benefits provided by Delaware law. In so doing, the Court quoted and applied the *Hanson* standard, that whether a state may assert jurisdiction depends upon whether the defendant "purposefully avails itself of the privilege of conducting activities within the forum State." *Id.* at 216, 97 S.Ct. at 2586.[8] That standard governs the case at bar.

The principal contact relied upon here as a basis for jurisdiction is performance of contractual obligations by the plaintiff, not the defendant, in the forum state. The First, Seventh, and Tenth Circuits have held that this is not sufficient, by itself, to confer jurisdiction over an out-of-state defendant, at least when the contract does not require the plaintiff to perform in the forum state. *Whittaker Corp. v. United Aircraft Corp.*, 482 F.2d 1079 (1st Cir. 1973) (involving contracts for goods); *Orton v. Woods Oil & Gas Co.*, supra, 249 F.2d at 202 (involving a contract for professional services); *Anderson v. Shiflett*, 435 F.2d 1036 (10th Cir. 1971) (involving a contract for professional services). The Ninth Circuit has agreed with this conclusion in dictum, *see Republic International Corp. v. Amco Engineers, Inc.*, 516 F.2d 161, 167 (9th Cir. 1975) (involving contracts for services). *Cf. Galgay v. Bulletin Co.*, 504 F.2d 1062 (2d Cir. 1974) (involving a contract for goods), in which the Second Circuit held that the defendant was not transacting any business within the state for purposes of the New York long-arm statute, which had not been held coextensive with due process, *see Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965), *cert. denied sub nom. Estwing Mfg. Co. v. Singer*, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1966). The Eighth Circuit has reached the opposite conclusion, relying on the plaintiff's performance in the forum state and other "contacts" that would be present in almost any interstate transaction. *Electro-Craft Corp. v. Maxwell Electronics Corp.*, 417 F.2d 365 (8th Cir. 1969) (involving a contract for goods); *contra, McQuay Inc. v. Samuel Schlosberg Inc.*, 321 F.Supp. 902, 906 (D.Minn.1971) (involving a contract for goods).[9]

---

**8.** *Compare* Foster, *Long-Arm Jurisdiction in Federal Courts,* 1969 Wis.L.Rev. 9, 33 (quoted in *Zerbel v. Federman & Co., supra,* 48 Wis.2d at 61, 179 N.W.2d at 876), stating that this statement in *Hanson* "is probably too sweeping."

**9.** District court decisions which hold that the assertion of jurisdiction is improper under these circumstances include *Wessel Co. v. Yoffee & Beitman Management Corp.*, 457 F.Supp. 939 (N.D.Ill.1978); *Management Science, Inc. v. Wilson Mfg. Co.*, 451 F.Supp. 963 (E.D.Wis.

The *Restatement (Second) of Conflict of Laws* § 50 (1971) states as follows:

A state has power to exercise judicial jurisdiction over a foreign corporation which causes effects in the state by an act done elsewhere with respect to any cause of action arising from these effects unless the nature of these effects and of the corporation's relationship to the state makes the exercise of such jurisdiction unreasonable.

Section 50 is identical to § 37 of the *Restatement,* except that the words "a foreign corporation" are substituted for the words "an individual," so the comments to § 37 are applicable to § 50. *See Restatement, supra,* § 50, Comment *a.* Comment *a* to § 37 states that when an out-of-state "act may not have been done with the intention of causing effects in the state but could reasonably have been expected to do so," the state's power to

exercise judicial jurisdiction . . . depends upon a variety of factors, including the extent of the relationship of the state to the defendant and to the plaintiff, the nature and quality of the effects resulting from the act, and the degree of inconvenience which would result to the defendant from being forced to stand suit in the state on the particular cause of action.

The appropriateness of exercising jurisdiction over the nonresident defendant increases, says the comment, in proportion to "the defendant's relationship to the state," which is important because of "considerations of fairness to the defendant," [10] and "because the more closely the defendant is related to the state, the greater is the interest of the state in him and consequently the more appropriate it will be, from the standpoint of the best interests of international and interstate systems, that the state should be in a position to try the case against the defendant in its courts." *Id.* Thus, the comment states, when the defendant has other substantial contacts with the forum state in addition to the transaction in issue, an exercise of jurisdiction is more reasonable than it would be in their absence. "The plaintiff's relationship to the state is also material." The other significant factor mentioned is the nature and quality of the effects that "could have been anticipated to occur, and . . . did occur, in the state." If those effects "are not of a sort highly dangerous to persons or things, the question whether the state may exercise jurisdiction over the defendant is likely to depend at least in part upon whether the defendant has other relationships to the state." [11]

1978); *Development Direction Inc. v. Zachary,* 430 F.Supp. 783 (S.D.N.Y.1976); *Middle Atlantic States Engineering, Inc. v. Camden City Municipal Utilities Authority,* 426 F.Supp. 299 (E.D.Pa.1977); *Jem Engineering & Mfg. Inc. v. Toomer Elec. Co.,* 413 F.Supp. 481 (N.D.Okl. 1976); *United Advertising Agency v. Robb,* 391 F.Supp. 626 (M.D.N.C.1975); *Gelderman & Co. v. Dussault,* 384 F.Supp. 566 (N.D.Ill.1974); *Rosenthal & Co. v. Dodick,* 365 F.Supp. 847 (N.D. Ill.1973); *Balistrieri v. O'Farrell,* 324 F.Supp. 151 (E.D.Wis.1971); *McQuay Inc. v. Samuel Schlosberg, Inc.,* 321 F.Supp. 902 (D.Minn. 1971); *Geneva Industries, Inc. v. Copeland Construction Corp.,* 312 F.Supp. 186 (N.D.Ill. 1970); *Oswalt Industries, Inc. v. Gilmore,* 297 F.Supp. 307 (D.Kan.1969). District court decisions reaching the opposite conclusion include *Nordberg Div. of Rex Chainbelt v. Hudson Engineering Corp.,* 361 F.Supp. 903 (E.D.Wis. 1973); *E. R. Wagner v. Quadratec,* 332 F.Supp. 810 (E.D.Wis.1971); *Simpson Timber Co. v. Great Salt Lake Minerals & Chemicals Corp.,* 296 F.Supp. 243 (D.Or.1969).

State courts are similarly divided. *Compare Belmont Industries, Inc. v. Superior Court,* 31

Cal.App.3d 281, 107 Cal.Rptr. 237 (5th Dist. 1973) *and Conn v. Whitmore,* 9 Utah 2d 250, 342 P.2d 871 (1959) *with Colony Press, Inc. v. Fleeman,* 17 Ill.App.3d 14, 308 N.E.2d 78 (1st Dist. 1974).

**10.** Described in this comment as primarily a matter of convenience, but elsewhere recognized to be a part of the "fair play and substantial justice" requirement that limits judicial jurisdiction to situations in which it "is fair and just" to exercise it. *Restatement (Second) of Conflict of Laws* § 24, Comment *b* (1971).

**11.** The forum state has a greater interest in protecting its citizens by providing a local forum in cases which involve effects "of a sort highly dangerous to persons and things," *Restatement, supra,* § 37, Comment *a.* These would normally be product liability or other tort cases. *E. g., Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961). The forum state has a lesser interest in protecting a corporation in an interstate contract dispute, especially when the

Applying these criteria to the case at bar, we note at the outset that Lakeside's cause of action is not one entirely "arising from these [in-state] effects," in the words of § 50 of the *Restatement.* It arises in part at least from events that occurred in West Virginia and Virginia.

More important from the standpoint of the *Restatement* analysis, in view of the fact that the events in Wisconsin were not "of a sort highly dangerous to persons or things," is the complete absence of "other relationships" between Mountain State and Wisconsin. It is the presence or absence of these other relationships upon which the state's right to "exercise jurisdiction over the defendant is likely to depend at least in part." *Restatement, supra,* § 37, Comment *a.*

When only the plaintiff has relationships to the forum state and the parties are business corporations engaged in a commercial contract dispute, another important factor comes into play, one which the *Restatement* comment calls "the best interests of the international and interstate systems." This factor is based on the proposition that "[a] state should not improperly impinge upon the interests of other states by trying in its courts a case with which it has no adequate relationship." [12] *Restatement, supra,* § 24, Comment *b.*

▇ Viewed realistically, the contacts with Wisconsin in this case consist solely of "[t]he unilateral activity of [one] who claim[s] some relationship with a nonresi-

dent defendant," and this "cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla, supra,* 357 U.S. at 253, 78 S.Ct. at 1240. Although Mountain State in a sense caused the activity in Wisconsin by placing the order, the contract between the parties left Lakeside in absolute control over where it would conduct that activity, and it made this decision and conducted the activity unilaterally.[13] Mountain State's belief, which we may assume existed, that Lakeside would choose to perform its contractual obligations in Wisconsin does not constitute an invocation of the benefits and protections of Wisconsin's laws; Mountain State did not "purposefully avail itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.; cf. Shaffer v. Heitner, supra,* 433 U.S. at 216, 97 S.Ct. at 2586. Therefore the courts of Wisconsin no more had jurisdiction over Mountain State than would the courts of England or Taiwan if Lakeside had chosen to have the goods manufactured in either of those places.

In reaching this conclusion we have not overlooked the other facts to which Lakeside refers in attempting to strengthen its argument in support of the district court's exercise of jurisdiction. That the contract specified "F.O.B. Sellers Plant Milwaukee Wisconsin" does not establish that the contract required Lakeside to perform its contractual obligations at its Wisconsin plant and does not itself create a contact sufficient to justify the challenged assertion of

corporation left the state to solicit and secure the contract, because the effects of a commercial contract are unlikely to involve danger to persons or things within the state's borders.

**12.** Even the forum state, according to the First Circuit, has an "interest . . . in not discouraging foreign purchasers from dealing with resident sellers for fear of having to engage in litigation in distant courts . . . ." *Whittaker Corp. v. United Aircraft Corp., supra,* 482 F.2d at 1085, citing *Fourth Northwestern National Bank of Minneapolis v. Hilson Industries, Inc.,* 264 Minn. 110, 117 N.W.2d 732, 736 (1962); *Conn v. Whitmore, supra,* 9 Utah 2d 250, 342 P.2d 871, 874–875. Whether to prefer

this interest of the forum state over others is a policy decision for that state to make, but the possibility of discouraging interstate transactions underscores the potential for unfairness in asserting jurisdiction over an out-of-state defendant who has no relationship with the forum state other than some of the effects of a contract he has entered into.

**13.** We express no opinion on whether the result would be different if the contract required the plaintiff to perform in the forum state or if the nature of the plaintiff's contractual obligations made performance in the forum state necessary.

jurisdiction,[14] especially when considered with the words immediately following, "with freight allowed to rail siding nearest project site." The fact that Wisconsin's courts would be available to Mountain State in a suit on the contract does not constitute a meaningful relationship between that company and that state. If Lakeside had conducted no activities related to the contract in Wisconsin, the courts of that state would nonetheless have had jurisdiction over a suit brought against Lakeside by Mountain State, as would the courts of any other state in which Lakeside was doing business. *See Restatement, supra,* § 47(2). Use of the interstate telephone and mail service to communicate with a Wisconsin plaintiff, if constituting contacts supporting jurisdiction, would give jurisdiction to any state into which communications were directed. The sending of the purchase order to Wisconsin does not significantly aid jurisdiction, especially when it was modified by Lakeside and eventually accepted as modified in West Virginia through Mountain State's acquiescence. In any event, formalities of contract execution are not determinative for purposes of jurisdiction. *See Restatement, supra,* at 106–107, 150–151. Finally, the dollar amount of the transaction can hardly be a principled basis for distinguishing between one case and another, let alone for ignoring the requirement, stated in *Hanson* and reiterated in *Shaffer,* that the defendant, not the plaintiff, conduct activities in the forum state.

Mountain State's motion for dismissal or transfer on the ground that the court lacked jurisdiction was well founded. The judgment is reversed, and the case is remanded with directions to vacate the judgment and either to dismiss the case or to transfer it to another district in which it might have been brought.

---

14. In *Agrashell, Inc. v. Bernard Sirotta Co.,* 344 F.2d 583 (2d Cir. 1965), the court, while minimizing the jurisdictional significance of communication over the telephone and through the mail and of the agreement that a contract be interpreted in accordance with forum state law, found significant the contract clause requiring shipment F.O.B. the forum state. At least one other fact, which has no counterpart in the case at bar, was considered significant, *viz.,* that the nonresident defendant owned or leased the trucks that transported the goods. To the extent that the *Agrashell* decision relies heavily on the contact created by the F.O.B. term, we disagree. If "[t]he law relating to the passage of risk in the sale and carriage of goods . . . is directly relevant to the policies governing personal jurisdiction over foreign corporations," *id.* at 589, we question at least the weight to be given that factor. If the presence of goods on which the defendant bears the risk of loss in a state is a sufficient contact to give that state jurisdiction over the defendant, as the *Agrashell* opinion seems to suggest, *id.* at 588–589, any state through which the goods pass in transit could exercise jurisdiction over the defendant. Such a holding would constitute an unwarranted expansion of the due process limits on the exercise of jurisdiction.