**MET–L–WOOD CORPORATION,**
**Plaintiff,**

v.

**LIFETIME POOLS, INC. and Hendon Pools of Michigan, Inc., Defendants.**

No. 79 C 2245.

United States District Court,
N. D. Illinois, E. D.

Aug. 30, 1979.

Stephen M. Slavin, Charles W. Deuser, II, Chicago, Ill., Coffield, Ungaretti, Harris & Slavin, Chicago, Ill., of counsel, for plaintiff.

Ronald R. Rassin, Chicago, Ill., Fink, Coff & Stern, Chicago, Ill., of counsel, Stephen A. Bromberg, Southfield, Mich., Bromberg, Robinson, Shapero & Cohn, Southfield, Mich., of counsel, for defendants.

McMILLEN, District Judge.

Pursuant to this court's diversity jurisdiction, plaintiff has brought this contract action against two defendants, Lifetime Pools, Inc. (Lifetime) and Hendon Pools of Michigan, Inc., (Hendon). Plaintiff is the assignee of this cause of action from an Illinois corporation of the same name.

Plaintiff manufactures panels consisting of metal sheets bonded to a wooden core. Defendant Lifetime has purchased panels from plaintiff as components for swimming pools which it manufactures and sells in Michigan. Count I of the complaint alleges Lifetime's failure to pay for goods received. Count II alleges that Hendon is liable for the principal amount under a guaranty agreement. Both defendants have filed Rule 12(b)(2) motions to dismiss the complaint for lack of personal jurisdiction, and defendant, Lifetime has filed an alternative motion seeking transfer of this case to the Eastern District of Michigan.

Plaintiff commenced its action on June 1, 1979. On June 5, 1979, defendant Lifetime filed a complaint against plaintiff in the Eastern District of Michigan, alleging breach of contract and warranty, negligence, and misrepresentation in connection with plaintiff's panels. Plaintiff argues that the Michigan complaint is a Rule 13(a) compulsory counterclaim in this lawsuit and therefore seeks a preliminary injunction against Lifetime's lawsuit in Michigan. The Michigan proceedings have been stayed pending our decision on these motions. We find and conclude that defendants' motions to dismiss for lack of personal jurisdiction should be granted and therefore will not reach the other pending motions.

The law in this case is governed by *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), which greatly expanded the jurisdiction of local courts over non-resident defendants and expanded even more the volume of decisions on this subject. One "amplification" of the doctrine was handed down in *Hanson v. Denckla,* 357 U.S. 235, at p. 253, 78 S.Ct. 1228, at pp. 1239–1240, 2 L.Ed.2d 1283 (1958) where the court said:

The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the

quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. *International Shoe Co. v. [State of] Washington,* 326 U.S. 310, 319, [66 S.Ct. 154, 159, 90 L.Ed. 95].

■ Affidavits have been filed by Golds for defendants and Kendrick for plaintiff, and we must resolve the conflicts in favor of plaintiff for the purpose of determining whether a *prima facie* case for personal jurisdiction exists. *E. g., United States Railway Equipment Co. v. Port Huron & Detroit Railroad Co.,* 495 F.2d 1127, 1128 (7th Cir. 1974).

The transaction at issue here was initiated by a salesman employed by plaintiff's assignor. He visited Lifetime in Michigan. This salesman and another employee subsequently made further sales visits to Lifetime in Michigan. Lifetime's purchase order was sent through the mails from Michigan to Illinois, where plaintiff manufactures its panels. Plaintiff sent its invoices through the mails from Chicago and has received payments from Lifetime the same way.

On four occasions, according to plaintiff's affidavit, plaintiff has held business meetings in its Chicago offices pertaining generally to this deal. Two of the meetings were held prior to the delivery of Lifetime's original purchase order, and two thereafter. Lifetime's then president appeared for the first meeting, and appeared with Hendon's then treasurer for the second meeting. Lifetime's then president appeared with another employee for the last two meetings. These were the only Lifetime and Hendon officials at the meetings in Illinois. The Kendrick affidavit establishes for present purposes that at the second business meeting he discussed credit terms for the proposed purchase with Hendon's treasurer, and that Hendon's treasurer agreed in addition to consider the execution of an appropriate guaranty agreement by Hendon. The meetings also involved discussions of the specifications for the products in question. All steps necessary to plaintiff's performance under the contract were completed in Illinois. The purchase order provided for sale F.O.B. Chicago.

Hendon, like Lifetime, generally conducts its business activities only in the state of Michigan. Hendon executed the guaranty agreement in Michigan, and delivered the agreement to Lifetime in Michigan.

The asserted basis for the exercise of *in personam* jurisdiction over defendants is contained in the Illinois Long Arm Statute, Ill.Rev.Stat. (1977) Ch. 110, § 17(1)(a), which provides for personal jurisdiction over any person who "transacts any business" in Illinois, where the cause of action arises from the business transacted. We hold that this provision, which is intended to be coextensive with the Due Process Clause of the Fourteenth Amendment (*Nelson v. Miller,* 11 Ill.2d 378, 143 N.E.2d 673 (1957)), does not extend this far. *Cf., Lakeside Bridge & Steel Co. v. Mountain State Construction Co., Inc.,* 597 F.2d 596 (7th Cir. 1979).

■ We rely on the totality of the factual circumstances in this case, but the key factors are as follows. The sales transaction was initiated by plaintiff within the state of Michigan. While plaintiff's contract performance occurred within Illinois, and the sales were made F.O.B. Chicago, these factors were not considered as defendant's controlling transactions in *Lakeside Bridge & Steel Co., supra.* As in that case, nothing in the contract required that plaintiff's performance occur within a specific state, but plaintiff and defendant must have assumed that it would occur in Illinois. Formalities of contract execution are not determinative for purposes of jurisdiction. *See Lakeside Bridge & Steel Co., supra,* 597 F.2d at 604.

■ Sending payment to Illinois or the failure to make payments to an Illinois vendor does not suffice to confer personal jurisdiction. *Telco Leasing, Inc. v. Marshall County Hospital,* 586 F.2d 49 (7th Cir. 1978). *Telco Leasing* also affirms that plaintiff's initiation of the transaction remains an im-

portant factor militating against personal jurisdiction. 586 F.2d at 52.

In view of the fact that defendants otherwise conducted their business wholly outside of Illinois, plaintiff must rely almost entirely on the four business meetings held in Illinois. While the discussions at the second meeting touched on the terms and execution of the purchase and guaranty agreements, this should not be determinative. Even if the agreements had been formed in Illinois, *Lakeside Bridge & Steel Co.* holds that the formalities of arranging the contract are not controlling for the purposes of personal jurisdiction. We realize that *Lakeside Bridge & Steel Co.* did not involve personal meetings in the forum state, but it did involve incoming telephone calls and mail, which the Illinois courts have found sufficient to support longarm jurisdiction. *Cook Associates v. Colonial Broach and Machine Co.*, 14 Ill.App.3d 965, 304 N.E.2d 27 (1st Dist.1973).

However, *International Shoe* and subsequent decisions which discuss the basic constitutional requirement of due process controlling these matters, require a weighing of the inconvenience and equities in requiring a defendant to appear in a foreign forum. Obviously if the unfiled counterclaim is compulsory, the controlling issue in this case will be the behavior of plaintiff's panels when they were incorporated into 413 of defendants' swimming pools. The panels were used and tested in Michigan, some were allegedly rejected by municipal inspectors in Michigan, and the allegedly defective panels are still there. Although plaintiff may use engineers or other experts to defend against this counterclaim, the physical evidence and most of the witnesses are in Michigan.

We note that the *Lakeside Bridge & Steel* case was decided on the merits and then reversed on the jurisdictional ground. This certainly proved to be an unfortunate waste of judicial and legal time and money, and it can be avoided here by letting the Michigan case proceed (or even by an appeal of this dismissal). It appears very possible, also, that our case would be transferred to Michigan pursuant to § 1404(a) if the "compulsory" counterclaim is filed, and there is some evidence that plaintiff won the race to the courthouse by misleading Lifetime (Golds' reply affidavit, ¶¶ 13–16). All of these factors help tilt the *International Shoe* scale of fairness and substantial justice in defendants' favor. We frankly believe that some of the Illinois court decisions have overlooked the equities in their anxiety to aid Illinois businesses, but the other side of the coin is that business from other states will be somewhat reluctant to make contacts here if they are unfairly required to defend in our courts.

The bottom line is that defendant Lifetime's minimal contacts with Illinois are insufficient to require it to stand trial here, when weighed in the light of the countervailing circumstances. If this is so as to Lifetime, it is even more so as to the guarantor defendant Hendon. Their motions to dismiss are granted on the ground of lack of jurisdiction over their persons.

SO ORDERED.