NORTHERN TRUST CO. as assignee of Unilease, a Division of United Leasing Co. of Illinois, Plaintiff,

v.

RANDOLPH C. DILLON, INC. and Randolph C. Dillon, Defendants.

No. 82 C 4814.

United States District Court, N.D. Illinois, E.D.

Feb. 23, 1983.

Thomas D. Donnelly, Jr., Joel A. Schechter, Grossman, Mitzenmacher & Schechter, Chicago, Ill., for plaintiff.

Erica T. Helfer, Rosenthal & Schanfield, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

WILLIAM T. HART, District Judge.

Plaintiff The Northern Trust Co. ("Northern Trust") filed this action against Randolph C. Dillon ("Randolph") and Randolph C. Dillon, Inc. ("Dillon, Inc.") in the Circuit Court of Cook County. The defendants removed this action to the United States District Court for the Northern District of Illinois. Subject matter jurisdiction is predicated on diversity of citizenship. 28 U.S.C. § 1332(a)(1).

Randolph and Dillon, Inc. have filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction. For the reasons stated below, the defendants' motion to dismiss is granted.

Northern Trust is an Illinois banking corporation with its principal place of business in Chicago, Illinois. Unilease, a division of United Leasing Co. of Illinois, is an Illinois corporation with its principal place of business in Chicago, Illinois. Dillon, Inc., a

California corporation with its principal place of business in Los Angeles, California, engages in the business of selling insurance. Randolph is vice-president of Dillon, Inc., and is a resident and citizen of California. Coburn Consultants, Inc. ("Coburn") is a California corporation with its principal place of business in Torrance, California. Coburn was engaged in the business of marketing computer systems to insurance agents.

The complaint, together with the briefs and affidavits filed relative to the instant motion, reveal the following. Dillon, Inc. received a flyer from Coburn describing certain computer equipment and programs known as the Farmer's Insurance Package.[1] After this initial solicitation, Randolph contacted Coburn with regard to purchasing its system. During the course of their negotiations, Coburn informed Randolph that some of Coburn's customers paid cash for the system, others found financing through local banks or leasing companies, and still others relied on Coburn to arrange mutually satisfactory financing.

On or about December 19, 1980, Dillon, Inc. agreed to purchase the Farmer's Insurance Package from Coburn and further agreed that Coburn would arrange the financing of the transaction. All negotiations between Randolph and Coburn with respect to Dillon, Inc.'s purchase of the Farmer's Insurance Package took place in California.

The financing of the purchase arranged by Coburn involved Dillon, Inc.'s leasing of the computer equipment from Unilease.[2]

On December 29, 1980, Dillon, Inc. executed a Delivery and Acceptance Receipt wherein Dillon acknowledged receipt of the hardware and software as contemplated by the purchase agreement and Unilease disbursed the proceeds to Coburn.

Also on December 29, 1980, Coburn (acting on behalf of Unilease) presented to Dillon, Inc. an equipment lease agreement in the amount of $11,448.00. Dillon, Inc. executed the lease agreement, and Randolph then granted a guaranty to Unilease in the amount of $11,448.00. The lease agreement provided that the lease would not be a binding agreement until accepted by the lessor and that Illinois law would govern the terms of the lease. The guaranty signed by Randolph also provided that Illinois law would govern the terms of the guaranty agreement. Dillon, Inc. and Randolph signed the lease agreement and guaranty in California. Unilease accepted the lease agreement in Chicago, Illinois on December 31, 1980.

Subsequent to or contemporaneous with Unilease accepting the lease with Dillon, Inc., Unilease assigned the lease to Northern Trust. Accordingly, Dillon, Inc. made lease payments to Northern Trust in accordance with the terms of the lease.[3]

On February 19, 1982, Dillon, Inc. was informed that the computer software updates, a feature Randolph considered to be essential for Dillon, Inc.'s effective use of the system (see n. 1, *supra*), no longer would be available.[4] Dillon, Inc. requested Unilease to hire a new software supplier; Unilease took no action.[5] Dillon, Inc. thereup-

---

**1.** The Farmer's Insurance Package included both hardware and software equipment. One component of the package was the computer software system which provided periodic updates from Farmer's Insurance Package detailing rate changes in the insurance industry. It was this feature which interested Dillon, Inc.

**2.** Neither the briefs nor affidavits make clear exactly what the financing terms were between Dillon, Inc., Coburn, and Unilease. It is not clear whether the "purchase" of the Farmer's Insurance Package included a lease with an option to purchase or simply a lease of the computer equipment. It also is not clear whether Dillon, Inc. was leasing both the hard-

ware and software equipment. However, an understanding of the exact terms of the financial arrangement is not essential for the disposition of the instant motion.

**3.** Northern Trust's brief states that Dillon, Inc. made thirteen payments to Northern Trust.

**4.** Neither the briefs nor affidavits filed relative to the instant motion indicate exactly who informed Dillon, Inc. that the computer software updates would no longer be available.

**5.** It is unclear why Unilease was requested to hire a new software supplier. It appears that Dillon, Inc. had been apprised of Unilease's

on attempted to tender the original computer system to Unilease, but Unilease rejected the tender.[6] On March 2, 1982, Dillon, Inc. ceased payments under the terms of the lease agreement.

In its two count complaint, Northern Trust alleges that Dillon, Inc. breached its lease agreement by failing to make the required payments under the agreement. Additionally, Northern Trust alleges that Randolph personally guaranteed Dillon, Inc.'s performance of the lease agreement. Northern Trust seeks actual damages of $14,355.44, attorney's fees of $644.55, and court costs.

Service of the complaint was effected and personal jurisdiction claimed through Fed. R.Civ.P. 4(d)(7) and 4(e), by reference to Ill.Rev.Stat. ch. 110, § 2–209, the Illinois long arm statute.

In support of their motion to dismiss for lack of personal jurisdiction, the defendants argue that the execution of a lease and guaranty with an Illinois corporation and the sending of lease payments to Illinois do not show sufficient contacts with Illinois to permit personal jurisdiction to be asserted by this Court.[7] They also contend that jurisdiction should not be invoked over them here since the contract was substantially performed in California. Further,

they argue that the exercise of personal jurisdiction over them would violate the due process clause of the Fourteenth Amendment due to the fact that the defendants never purposefully availed themselves of the privileges and benefits of conducting activities within the state of Illinois, and thus could not reasonably foresee that their conduct and connection with Illinois was such that they could anticipate being brought into court in this state.

In opposing the motion, Northern Trust argues that two statements in the lease agreement and guaranty signed by the defendants—that the lease agreement would not become binding until accepted by the lessor, and that Illinois law would govern the terms of the lease agreement and guaranty—demonstrate that the defendants "transacted business" in the state of Illinois. *See* Ill.Rev.Stat. ch. 110, § 2–209(a)(1). Furthermore, Northern Trust argues that Dillon, Inc. initiated the purchase of the computer system from Coburn and that Dillon, Inc. relied on Coburn to finalize the financing of the transaction. Northern Trust asserts that the case law holds that where nonresident defendants initiate transactions with Illinois plaintiffs, personal jurisdiction over the defendants may be asserted by an Illinois court.[8]

---

assignment of the lease to Northern Trust. Furthermore, it is unclear why Dillon, Inc. did not request Coburn, the original supplier of the software, to hire a substitute software supplier. These factual uncertainties are not important, however, to the jurisdictional issue presented by defendants' motion.

6. Defendants' briefs and affidavits do not state why the tender was made to Unilease and not Northern Trust.

7. A federal court has jurisdiction over the parties in a diversity case, such as the instant case, only if a court of the state in which the federal court is sitting would have jurisdiction. Fed.R. Civ.P. 4(e) and 4(d)(7). *See* 4 Wright & Miller, *Federal Practice and Procedure:* Civil § 1075 (1969); *Lakeside Bridge & Steel Co. v. Mountain State Construction,* 597 F.2d 596 (7th Cir. 1979), *cert. denied,* 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980).

8. Until recently, the Illinois long arm statute was interpreted as being coextensive with the due process clause. *Nelson v. Miller,* 11 Ill.2d

378, 143 N.E.2d 673, 679 (1957), held that the Illinois long arm statute reflected a conscious purpose to assert jurisdiction over nonresident defendants to the extent permitted by the due process clause.

However, in two recent decisions the Illinois Supreme Court has indicated that the *Nelson* decision does not necessarily stand for the proposition that the construction and application of the Illinois long arm statute depend entirely on decisions determining in what circumstances due process would permit long arm jurisdiction to be asserted. *Cook Associates, Inc. v. Lexington United Corp.,* 87 Ill.2d 190, 57 Ill.Dec. 730, 429 N.E.2d 847 (1981); *Green v. Advance Ross Electronics, Corp.,* 86 Ill.2d 431, 56 Ill.Dec. 657, 427 N.E.2d 1203 (1981). In these cases the Illinois Supreme Court has indicated that instead of initially looking at the tests articulated in determining whether the long arm statute as applied exceeds the permissible constitutional boundaries, Illinois courts first should look to the meaning of the Illinois statute.

■ The due process clause of the Fourteenth Amendment requires that in order to assert personal jurisdiction over a non-resident defendant, the defendant must have had such "minimum contacts" with the forum state as will make the assertion of jurisdiction over the defendant consistent with "traditional notions of fair play and substantial justice." *International Shoe Company v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Additionally, "it is essential in each case that there be some act by which the defendant purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

■ The defendants' contacts with Illinois urged by Northern Trust to be sufficient to satisfy the due process "minimum contacts" test consist of the acceptance of the lease agreement and guaranty by the lessor (Unilease) in Illinois, plus a clause in the lease and guaranty stating that Illinois law will govern both agreements. These contacts are not sufficient to satisfy the requirements of due process. The mere acceptance of a lease by Unilease in Illinois, which had been partially executed in California, is not determinative for purposes of jurisdiction. The formalities of contract execution, such as the acceptance in a particular location, do not demonstrate the "minimum contacts" required by due process. *Lakeside Bridge and Steel Co. v. Mountain State Construction Co., Inc.,* 597 F.2d 596 (7th Cir.1979), *cert. denied,* 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980); *Telco Leasing, Inc. v. Marshall County Hospital,* 586 F.2d 49 (7th Cir.1978); *Wessel Co. v. Yoffee Beitman Management Corp.,* 457 F.Supp. 939, 941 (N.D.Ill.1978). Rather, it is necessary to look at the facts and circumstances surrounding the transaction to determine whether the assertion of jurisdiction would comport with traditional notions of fair play and substantial justice.

The decision of the Seventh Circuit in *Telco Leasing, supra,* controls the disposition of the instant case. The nonresident defendant in *Telco Leasing* was brought

---

In *Green, supra,* the Illinois Supreme Court held that where the actions complained of involved a breach of corporate fiduciary duties which had occurred entirely in Texas, which actions depleted an Illinois bank account of the Texas corporation, there was no basis for asserting jurisdiction under the Illinois long arm statute. In *Cook Associates, supra,* the court held that where the only contact with Illinois was the parties' conduct of negotiations in Illinois concerning a matter unrelated to the pending lawsuit, the nonresident defendant had not transacted business in Illinois within the meaning of the long arm statute.

The decisions in *Green* and *Cook Associates* have engendered a significant amount of discussion as to whether the Illinois Supreme Court intended to limit dramatically the scope of the Illinois long arm statute. In *Ronco, Inc. v. Plastics, Inc.,* 539 F.Supp. 391, 398 (N.D.Ill. 1982), Judge Marshall gave his view that *Green* and *Cook Associates* do not represent a drastic departure from prior Illinois law, but instead stand for the proposition that, before any constitutional issue is reached, courts must analyze whether jurisdiction is established under any of the statutory tests laid down in the language of the statute. *See also U.S. Reduction Co. v. Amalgamet, Inc.,* 545 F.Supp. 401 (N.D.Ill.1982) (noting that an interpretation of the Illinois long arm statute extending jurisdiction to the limits of the due process clause is no longer proper since the decisions in *Green* and *Cook Associates* ); *Sportmart, Inc. v. Frisch,* 537 F.Supp. 1254, 1256 (N.D.Ill.1982) (acknowledging that the decisions in *Green* and *Cook Associates* may indicate a more restrictive interpretation of the Illinois long arm statute than has been applied under the due process clause); *Vena v. Western General Agency, Inc.,* 543 F.Supp. 779 (N.D.Ill.1982) (concluding that the inquiry after *Green* and *Cook Associates* is a two-step analysis: first a court must interpret whether the nonresident defendant's conduct falls within the meaning of the long arm statute; if it does, then the court must determine whether asserting jurisdiction over the defendant would be consistent with the due process clause).

The Illinois courts have not yet refined the meaning of *Green* and *Cook Associates,* so a federal court sitting in diversity cannot definitely state whether the "transacting business" test of the Illinois long arm statute is in fact distinct from the minimum contacts test applied by the Illinois courts for twenty-five years. But the uncertainty as to the scope of the Illinois long arm statute does not affect the disposition of the instant motion. The defendants' contacts with Illinois simply do not meet the "minimum contacts" requirements of due process.

into contact with the Illinois plaintiff through the actions of the nonresident agents of the Illinois plaintiff. These agents sent copies of the leases to the nonresident defendant who signed the leases outside of Illinois. At no time did any agent of the defendant in *Telco Leasing* ever enter Illinois in connection with the lease agreements.

The Seventh Circuit found the nonresident defendant's contacts with Illinois to be insufficient to meet the "minimum contacts" requirements of the due process clause. The court also stated that a choice of law provision in a lease did not serve as a basis for jurisdiction. Further, the court refused to accept the argument that making payments by mail to the plaintiff's Chicago office constituted activity within the state of Illinois. Finally, the court rejected the argument that the nonresident defendant's communication by phone with the plaintiff in Illinois gave an Illinois court jurisdiction over the non-resident defendant.

█ The facts and circumstances surrounding the transaction in the instant case are analogous to the situation presented in *Telco Leasing*. The defendants' only contact with Illinois was the sending of lease payments to Unilease's office in Illinois. It is settled, however, that the sending of lease payments to Illinois does not suffice to confer personal jurisdiction over a nonresident defendant. *Lakeside Bridge, supra; Telco Leasing, supra. See also Met-L-Wood Corp. v. Lifetime Pools, Inc.,* 475 F.Supp. 149 (N.D.Ill.1979). Furthermore, all negotiations concerning the transaction occurred in California. Neither Randolph nor any agent of Dillon, Inc. ever entered Illinois for the purpose of negotiating the instant transaction.

However, Northern Trust contends that Coburn acted as agent for Dillon, Inc. when Coburn arranged the financing of Dillon, Inc.'s lease agreement with Unilease. In support of its position, Northern Trust points to the fact that Dillon, Inc. could have obtained the financing on its own, but instead chose to rely on Coburn to arrange the financing. Therefore, argues Northern Trust, since Dillon, Inc., through its agent Coburn, initiated a transaction with an Illinois citizen, it is subject to personal jurisdiction in Illinois.

█ This argument must be rejected. Save for the naked assertion in Northern Trust's brief, there is no indication that Coburn was in fact serving as an agent for Dillon, Inc. Indeed, the more plausible explanation is that Coburn obtained the financing of the agreement for Dillon, Inc., in furtherance of its relationship with Unilease. But even if the Court were to assume that Coburn was serving as an agent of Dillon, Inc. in arranging the financing, there is no indication that even *Coburn* entered Illinois in order to obtain the financing or that Coburn even dealt with Unilease's Illinois office. Neither Dillon nor any alleged agent of Dillon, Inc. has had sufficient contacts with Illinois to support the assertion of personal jurisdiction. *Cf. Wisconsin Electrical Mfg. Co., Inc. v. Pennant Products, Inc.,* 619 F.2d 676 (7th Cir.1980) (court asserted jurisdiction over nonresident defendant because defendant's agents entered state for the purpose of negotiations which were significant to the formation of the contract with resident plaintiff).

█ Similarly, a clause in the lease agreement and guaranty which states that Illinois law will govern is not sufficient to confer jurisdiction over a nonresident defendant. *Telco Leasing, supra; Lakeside Bridge, supra.* Parties to an agreement may elect to have a particular state's law govern the terms of an agreement for any number of reasons. For example, the commercial law of one jurisdiction may be incorporated merely as a contract "gap filler." While the parties may have expressed an intent to abide by the substantive law of one state, such a clause evidences no intent or agreement to be sued and to be forced to defend in that same state. Further, to hold that the existence of a governing law clause in an agreement confers upon a court the power to assert jurisdiction over a nonresident is tantamount to holding that choice of

law equals consent to personal jurisdiction. *Cf. The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (consent to personal jurisdiction possible); *Comprehensive March. Cat., Inc. v. Madison Sales Corp.,* 521 F.2d 1210 (7th Cir.1975). The two concepts are distinct. A holding that choice of law is equivalent to consent to personal jurisdiction might even raise problems as to the constitutionality of a waiver of due process rights. In the absence of additional circumstances evidencing that the nonresident purposefully availed itself of the benefits and protections of the forum, a choice of law provision is not enough to warrant the assertion of personal jurisdiction over a nonresident defendant.

THEREFORE IT IS ORDERED that

(1) Defendants' motion to dismiss for lack of personal jurisdiction is granted.

(2) This action is dismissed.