Phyllis D. **PARDONNET**, Administratrix of the Estate of Charles William Pardonnet, Deceased, Libelant,

v.

The **FLYING TIGER LINE, INC.**, Respondent.

No. 63 C 67.

United States District Court
N. D. Illinois, W. D.
June 19, 1964.

684

Cool & Phillips, Colorado Springs, Colo., for libelant.

William H. Schrader, Heineke, Conklin & Schrader, Chicago, Ill., for respondent.

DECKER, District Judge.

This case involves a libel in admiralty, filed by the personal representative of a deceased, who was killed in an air line crash on the high seas. This Court has jurisdiction under an act entitled, "Death on the High Seas by Wrongful Act," 46 U.S.C. § 761.

Respondent has filed a special appearance and exception to the jurisdiction of this Court on the ground that the Warsaw Convention, 49 Stat. 3000, a treaty to which the United States is a party, provides that the only United States court which could have jurisdiction of this cause of action is in California. Specifically, the respondent contends that Article 28 of the Convention deprives this Court of jurisdiction. Article 28 provides as follows:

"(1) An action for damages must be brought, at the option of the plaintiff, in the territory of one of the

High Contracting Parties, either before the court of the domicile of the carrier or of his principal place of business, or where he has a place of business through which the contract has been made, or before the court at the place of destination.

"(2) Questions of procedure shall be governed by the law of the court to which the case is submitted."

On the wording of this Article the respondent argues that since this Court is neither the court of the carrier's domicile, nor the court where the carrier has its principal place of business, nor the court where the carrier has a place of business through which the contract of carriage has been made, nor the court of the place of destination of the flight, that this Court is without jurisdiction and must dismiss the libel.

For the purpose of disposing of respondent's exception to jurisdiction, the parties have agreed to a statement of facts in this case. It has been stipulated that the respondent, The Flying Tiger Line, Inc., is a Delaware corporation, having its principal place of business in Burbank, California. On October 1, 1961, a written agreement, a "Call Agreement," was entered into between the respondent and the Air Force Department of the United States of America. Pursuant to the Call Agreement, a service order dated March 2, 1962, was issued by the United States Air Force to the respondent at Burbank, California, and under which respondent agreed to transport United States military personnel from Travis Air Force Base, California, to Saigon, Viet Nam. On March 14, 1962, one of respondent's aircraft began operating as a Military Air Transport Service Charter Flight 739/14. At all times material to this libel respondent owned the aircraft in question, Lockheed Model 1049H, U. S. Registry License N6921C.

Prior to boarding the flight in question, each of the ninety-six United States military personnel was handed a boarding ticket at Travis Air Force Base by an employee of the respondent, The Flying Tiger Line, Inc., each with his own name thereon. Each of these boarding tickets showed that the departure of the flight in question was from Travis Air Force Base, California, with destination, Saigon, Viet Nam. Charles William Pardonnet, libelant's deceased, was issued one of the above-mentioned boarding tickets.

Aboard the flight in question were one plane captain, two co-pilots, two flight engineers, two navigators and four stewardesses (all employed by the respondent, The Flying Tiger Line, Inc.) and ninety-six United States military personnel, including Charles William Pardonnet, libelant's deceased. It was agreed between the respondent and the Air Force that money would be paid to the respondent by the United States of America covering the passage of the ninety-six United States military personnel from Travis Air Force Base to Saigon, Viet Nam. Subsequent to the departure of the flight in question from Agana, Guam, on March 15, 1962, the aircraft disappeared and has never been found.

The United States adhered to the Warsaw Convention on October 29, 1934, and Viet Nam adhered to the Convention on September 29, 1958.

The sole question before this Court is: If the Warsaw Convention does apply, are the provisions of Article 28(1) of the Warsaw Convention such that they prevent the jurisdiction of this Court from attaching to a suit brought under the Death on the High Seas Act when the respondent has neither its principal place of business, its domicile nor the place of business through which the contract of carriage of the libelant's deceased was made, in the Northern District of Illinois, and further when the Northern District of Illinois was not the place of destination of the flight in question?

It is not appropriate at this point to pass upon the question of whether the Warsaw Convention applies so as to limit the damages recoverable for wrongful death to $8,300.00. The parties have extensively briefed this point, but its

resolution may appropriately wait until a later stage of the proceedings when the merits are at issue.

The issue is rather whether, regardless of the application of the Warsaw Convention, this Court has jurisdiction. The respondent bases its argument that this Court lacks jurisdiction solely on the theory that the Warsaw Convention applies, and by the provision of Article 28(1) bars the jurisdiction of this Court. Therefore, assuming, for the purposes of the jurisdictional question only, that the Warsaw Convention does apply, the question is does its application bar this Court from jurisdiction?

In this case it is clear that the domicile of the respondent is Delaware and its principal place of business is Burbank, California. It is also clear that the place where the respondent has a place of business through which the contract has been made is also in Burbank, California. There is no dispute that the destination of the flight in question was South Viet Nam. None of the four forums mentioned in Article 28 of the Warsaw Convention lies in the Northern District of Illinois.

In Martino v. Trans World Airlines, Inc., filed in this Court (60 C 1730), Judge Edwin A. Robson dismissed a lawsuit very similar to the one at bar because there the defendant airline was a Delaware corporation, with its principal place of business in Kansas City, Missouri, and the place of business of the defendant where the contract for a round trip was entered into was in Washington, D. C. Judge Robson specifically found that none of the four permissible alternative situs of jurisdiction existed there.

Two recent law review articles have explored this point, and both have come to the conclusion that Article 28(1) of the Warsaw Convention should be interpreted on a "national basis"; that the four forums or situs for a lawsuit mentioned in Article 28(1) should not be considered jurisdictional as far as United States Courts are concerned but rather that each of the four should only refer to the nation in which the lawsuit must be brought under the Convention. The articles are found in 29 Journal of Air Law and Commerce, 205, 226 et seq. (1963); and Charles E. Robbins, Jurisdiction under Article 28 of the Warsaw Convention, 9 McGill L.J. 352 (1963).

■ The United States has not adopted a statute implementing the Warsaw Convention or Treaty. If this had been done, and if a provision like Article 28(1) had been reproduced in that statute, the argument that Congress had meant to limit domestic jurisdiction to the four situs specified in Article 28(1) would be more persuasive. However, it seems doubtful that the drafters of the Warsaw Convention, almost all of whom were from civil law, not common law, countries, and only a small number of whom were from countries which have a federal court system similar to that in the United States, would be concerned at all with the internal operations of the judicial system of any particular nation. Thus, it seems the better construction of Article 28(1) of the Warsaw Convention to read each of the four situs mentioned as referring only to the nation in which the suit may be brought but not to a particular court within a nation.

Under this interpretation of the Convention, libelant could bring her suit in either the United States or in South Viet Nam. The particular court in either of these two nations in which the suit had to be brought would then be referred to the local law of each of the two nations.

■ This interpretation is supported by the fact that nowhere in the Warsaw Convention is it provided that the suit must be brought on the admiralty side of a court as a libel rather than as a civil action. It is clear, however, that 46 U.S.C. § 761 requires that all suits brought under the Death on the High Seas Act be brought on the admiralty side of the Federal District Courts, and numerous Federal District Courts have so held. Higa v. Transocean Airlines, 230 F.2d 780 (C.A.Hawaii 1956), cert. denied 352 U.S. 802, 77 S.Ct. 20, 1 L.Ed. 2d 37; Trihey v. Transocean Air Lines, Inc., 255 F.2d 824 (C.A.Cal.1958) cert.

denied 358 U.S. 838, 79 S.Ct. 62, 3 L.Ed.2d 74; Fernandez v. Linea Aeropostal Venezolana, 156 F.Supp. 94 (D.C. N.Y.1957); Noel v. Linea Venezolana, 154 F.Supp. 162 (D.C.N.Y.1956); Noel v. Linea Aeropostal Venezolana, 144 F. Supp. 359 (D.C.N.Y.1956); Iafrate v. Compagnie Generale Transatlantique, 106 F.Supp. 619 (D.C.N.Y.1952).

The drafters of the Convention would seem to have been no more concerned with whether the situs of the action should be in one Federal District of the United States or another than they were in whether the form of the action were civil or in admiralty.

In Pitman v. Pan American World Airways, 223 F.Supp. 887 (E.D.Pa.1963), one of the cases which gave rise to the two law review articles referred to above, this problem was considered, and Judge Grim said (at page 888):

> "The Warsaw Convention was drafted in contemplation of adherence by many nations with widely divergent systems of jurisprudence and court structure. While the drafters * * intended to limit the places where damage suits could be brought, it seems unlikely that they were concerned whether a suit properly brought in the United States was tried in Philadelphia rather than New York."

In that case an Arkansas plaintiff brought a civil action against an airline with its domicile and principal place of business in New York for personal injuries occurring on a flight from Germany to New York, with the injury occurring in Holland. Judge Grim also considered discussions held at the Warsaw Conference in finding that Article 28(1) referred to "national" forums only. His interpretation of these discussions is supported by Calkins, "The Cause of Action under the Warsaw Convention," 26 J.A.L.C. 217, 222 (1959).

The second case discussed in the two 1963 law review articles is Spencer v. Northwest Orient Airlines, 201 F.Supp. 504 (S.D.N.Y.1962). There the Court denied the defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b) on the ground that the Court lacked jurisdiction of the subject matter —a diversity suit for personal injuries brought by a United States citizen residing in Hong Kong, who was injured in the Philippines on an Asiatic flight by the defendant's airline. The airline was domiciled and had its principal place of business in Minnesota. The Court said at page 506:

> " * * * the use of the term 'jurisdiction' in an international convention drawn by representatives of nations with widely divergent systems of jurisprudence can scarcely be construed to refer to the concept of subject matter jurisdiction as used in the federal judicial system of the United States."

Further support of this "national" interpretation of Article 28 of the Convention is found in subsection (2) of that Article, which states that: "Questions of procedure shall be governed by the law of the court to which the case is submitted." Under Article 28(1), the suit must be brought in the territory of one of the high contracting parties; but questions of procedure, such as whether that suit should be on the civil side or the admiralty side of the court, or such as where within the territory of one of the high contracting parties the court in which the suit is filed should be located, are to be left to the law of the court to which the case is submitted. Any distinction intended by the drafters of the Convention between substance and procedure would seem to be intended to determine which nation among the various nations who are parties to the Convention may hear a suit for damages arising from an airplane crash. What court within an acceptable nation-forum that can hear a case would appear to be of no international interest.

The defendant's argument in the case at bar would seem to require a reading of the Article as distinguishing between substance and procedure as if the Article decided in which court, out of thousands

available in the United States, suit must be brought. This highly technical problem, while it may be important to the United States, cannot reasonably be conceived to be of concern to the drafters of the Convention, and such an interpretation of Article 28(2) would be unwarranted.

In addition to Martino v. Trans World Airlines, supra, the respondent relies on two other cases in support of its motion: Dunning v. Pan American World Airways, 1954 U.S. & Can.Av.R. 70 (D.C. D.C.), and Scarf v. Allied Aviation Service Corp. and T. W. A., 1955 U.S. & C.Av. R. 669, 156 U.S. & C.Av.R. 28 (S.D.N.Y.). Those cases did not deal with the question of a Federal District Court's jurisdiction to hear a suit but rather dealt with questions of venue under 28 U.S.C. § 1406(a). Both courts adopted the view apparently that the Warsaw Convention establishes its own venue requirements; each court transferred cases to the forum which it considered to be the more proper venue. Those cases are not persuasive in resolution of the motion in the case at bar and clearly are not dispositive of the issue here.

 All of the District Court cases cited above and relied upon by the respondent were civil cases. The case at bar is a libel in admiralty, and it must be pointed out that the jurisdiction and venue requirements for an admiralty case in the United States may be different than the requirements for civil cases based upon diversity of citizenship jurisdiction. There is no venue requirement in admiralty; the libelant is permitted to file a libel in admiralty in any place where it can get personal service on or attachment against the respondent. 28 U.S.C. § 1333(1) confers jurisdiction on the United States District Courts. In re St. Paul Fire and Marine Ins. Co., 134 U.S. 493, 10 S.Ct. 589, 33 L.Ed. 994 (1890), clearly holds that a libel in personam under the admiralty jurisdiction of the United States District Court may be maintained against a corporation in any district in which service of process may be had upon it. In the case at bar,

The Flying Tiger Line, Inc., does business in Illinois; service was properly had upon it; and venue would lie under 28 U.S.C. § 1391.

In conclusion, assuming only for the purposes of respondent's exception to the jurisdiction of this Court, that the Warsaw Convention does apply to this case, Article 28(1) determines only which *nations* can hear the case, but not which court within an appropriate nation. Article 28(2), by leaving questions of procedure to the court to which the case is submitted, would determine which court within an appropriate nation may hear a case. Under the domestic jurisdiction and venue statutes of the United States, the libel in personam in the case at bar is properly filed in the Northern District of Illinois, and this Court properly has jurisdiction and venue of the subject matter and parties.

Therefore, the respondent's special appearance and exception to the jurisdiction of this Court is overruled, and the respondent is directed to answer the libel within twenty days.