**TARSTAR SHIPPING CO.,**
Plaintiff-Appellee,

v.

**CENTURY SHIPLINE, LTD.,** Century Shipline & Agencies, Inc.,
Defendants,

and

**Koctug Line, Defendant-Appellant.**

**No. 545, Docket 78–7453.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 18, 1979.

Decided April 27, 1979.

Daniel K. Read, New York City (Hill, Betts & Nash, New York City, of counsel), for defendant-appellant.

Philip V. Moyles, New York City (Robert J. Babiak, Freehill, Hogan & Mahar, New York City, of counsel), for plaintiff-appellee.

Before OAKES, GURFEIN and Van GRAAFEILAND, Circuit Judges.

PER CURIAM:

Tarstar Shipping Co. ("Tarstar"), owner of the vessel M/V ALIKI I.P., sued Koctug Line ("Koctug"), a Turkish shipping company, for unjustified refusal to honor Tarstar's notice of lien on freights or subfreights owing from Koctug to the vessel's charterer, Century Shipline, Ltd. ("Century").[1] After a non-jury trial, the United States District Court for the Southern District of New York (Hon. Robert J. Ward, J.) held in favor of Tarstar and awarded it damages in the amount of $85,071.55 plus interest from March 8, 1976, the date on which notice was served.

The District Court described the factual background of the case substantially as follows. Tarstar is a Liberian shipping compa-

1. Tarstar invoked jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332, as well as the court's jurisdiction over admiralty and maritime matters, 28 U.S.C. § 1333.

ny. On February 6, 1976, Tarstar entered into a time charter party with Century under which Century chartered the vessel M/V ALIKI I.P. for carrier service. Payment of charter hire was to be made semimonthly in advance, and the charter party provided "[t]hat the Owners shall have a lien upon all cargoes, and all subfreights for any amounts due under this Charter . . . ." Century defaulted on the second hire payment of $65,812.50, due on February 26, 1976, as well as on a payment for bunkers. This event triggered Tarstar's attempt to enforce its contractual lien on the freights, which led to its encounter with Koctug, whose further action and inaction is described below.

Koctug is itself a maritime carrier, with a fleet of vessels both owned and chartered which operate between the Mediterranean and the United States. On January 9, 1976, Koctug entered into a Liner Booking Note contract with Prodex International ("Prodex"), a grain merchant, to carry a shipment of lentil beans from Baton Rouge, Louisiana, to Algiers, Algeria sometime between February 20–28, 1976. Koctug intended to carry this cargo on one of its own vessels but had the right to substitute another's vessel if one of its own was not available. Finding that it had no vessel available to meet the loading date, Koctug attempted to find a substitute. To this end, Koctug requested Charles Ries, a broker employed by International Chartering Services, Inc. ("International"), to locate a suitable vessel. Ries discovered that the ALIKI was available, and a Freight Engagement was negotiated between Koctug and Century Shipline & Agency, Inc. ("Century Shipline"), agent for Century.

The Freight Engagement, dated February 10, 1976, is unsigned. It is, however, printed on a Century Shipline & Agency form, with "I.S.O.S." (International) listed "as Agents to Charterers." The document confirms "reservation of space for *your*

account" (emphasis added) on the ALIKI, and it specifies a cargo of 3,500 long tons, more or less, of lentil beans. Freight is to be "fully prepaid in New York 6 days after release of Bills of Lading less commission," with the bills of lading to read "Freight Payable as per Engagement Note."[2] The terms of the Freight Engagement were confirmed by a telex recap dated February 11, 1976.

The ALIKI was loaded with the cargo of lentil beans on February 25, 1976, and bills of lading were issued to the shippers. Accordingly, under the terms of the Freight Engagement, freight was to be paid to Century by March 2, 1976.[3] On March 1, ICD Export Corp. (on behalf of the shippers) delivered to Koctug's New York office a check to the order of Koctug for $147,326.57. The same day, Koctug endorsed the check over to International, and delivered it to International so that the latter could pay Century for the freight due on March 2. As is apparently customary in such transactions, International deposited the check in its own account at Marine Midland Bank on March 3. A week later, on March 10, International had a new check in the amount of $127,519.38 issued to Century Shipline, as agent for Century, for the freight less International's commission. On March 11, 1976, Century Shipline returned the check to International with the request that it be certified. The check was certified and returned to Century Shipline that same day. The check was paid by Marine Midland on March 12.

Tarstar served Koctug with notice of its contractual lien on the freights on March 8. This was a full week after Koctug had delivered the endorsed check for freight to International. It was, however, before the date when International's first check to Century was issued, as well as before the date on which the check was finally paid.

---

2. This last provision was apparently added because the rate charged by Century, $40.00 per long ton, differed from the rate of $45.00 per long ton to which Koctug was entitled under the Liner Booking Note.

3. The District Court found that "Prodex was to pay freight or subfreight to Koctug and Koctug was to pay Century."

Okyay Ustun, Koctug's New York representative, received a telephone call on March 8 from Tarstar's New York counsel, who informed him that Century had defaulted on the charter hire, and that Tarstar was asserting its lien on all unpaid freights. This was followed the same day by a formal written notice of lien. At that time Ustun failed to inform Tarstar's counsel either that the actual shipper was Prodex or that Koctug had turned over the balance of the freight to International.

Several days later, on March 12, Ustun consulted his own counsel and then attempted to get the freight money back from International. International did try to stop the check at the Marine Midland Bank, but the bank reported that it was too late. The proceeds had been paid. The freight had finally come to rest in the account of Century four days after the notice of lien to appellant.

On these facts the District Court made the following findings: (1) A lien on freights of the ALIKI arose in favor of appellee Tarstar, the vessel owner, when Century defaulted in its payment of charter hire. (2) Tarstar was neither guilty of laches in asserting its lien nor at fault for refraining from asserting a lien against the cargo, since it had no right to a lien on cargo once bills of lading had been issued. (3) When Koctug hired space on the ALIKI it did so for its own account, in fulfillment of its obligation to the shipper to supply a substitute vessel. Judge Ward specifically found that Koctug had failed to prove it entered into the Freight Engagement as agent for a disclosed principal, the shipper. (4) When Koctug endorsed the check for freight over to International, it was paying the freight to its own agent, which had obtained the vessel on Koctug's behalf. This finding is supported by the reference to International in the Freight Engagement as agent for the "charterer" (*i. e.*, the space charterer), as well as the fact that International split brokers' commissions with another broker, N.J. Costalas, Inc., which acted for Century. Also, as Judge Ward noted, the agency relationship between Koctug and International was confirmed when Koc-

tug's representative, Ustun, testified that "*my* broker [International]" paid Century (emphasis added). (5) When the notice of lien was served upon Koctug on March 8, the freight proceeds had not yet been paid over to Century or Century's agent but were still in the possession or under the control of International. (6) Koctug, as principal, had the power to order its agent International not to pay Century until the priority of the asserted lien by Tarstar was determined. (7) Koctug could not assume on March 8, when it received notice of Tarstar's lien, that International had already paid Century or its agent, since it was expected that before International would give its own check (less its commission) to Century, it would wait for the shipper's check to clear.

The District Court drew the following conclusions of law: (1) Koctug was obligated under the Freight Engagement to honor Tarstar's contractual lien with respect to freights under Koctug's control that were not yet paid to the charterer. (2) Since International was Koctug's agent, Koctug still had control of the funds. (3) Koctug's failure to give information to Tarstar that it had paid the freight proceeds to International as well as its failure to notify its agent, International, of the notice of lien and to seek its cooperation in stopping payment to Century (a cooperation which subsequent events showed would have been forthcoming) were breaches of duty owed to the lienor. (4) The inaction of Koctug caused damage to Tarstar to the extent of its lien since Century was insolvent.

The court accordingly ordered judgment in favor of Tarstar in the sum of $85,071.55, with pre-judgment interest from March 8, 1976—the date of notice.

We think the District Court was clearly correct in holding that Koctug was obligated to honor a timely notice of lien with respect to the freights, provided the freights were in its control and had not been paid over to the charterer or its agent. Since it is clear that the freights were in International's account when Koctug re-

ceived the notice of lien, the case turns on International's status. Were International, as Koctug contends, agent of the charterer, we do not doubt that the freights would have already been paid and would have lost their character as an independent *res* to which the owner's lien could attach. *See Tagart, Beaton & Co. v. James Fisher & Sons,* [1903] 1 K.B. 391. Nevertheless, Judge Ward's excellent opinion, reported in 451 F.Supp. 317 (S.D.N.Y.1978), found to the contrary and we see no reason to depart from his lucid analysis of the facts and pertinent law. We are in agreement with the District Court that when Koctug received notice of the lien, it was obligated in good faith to make a prompt effort to ascertain the status of the freights and whether they were still in its agent's hands. We accordingly affirm on the opinion below.