**Hendrik KOSTER, a Citizen of the Netherlands, Plaintiff-Appellee,**

v.

**AUTOMARK INDUSTRIES, INCORPORATED, a Delaware Corporation, Defendant-Appellant.**

No. 80-1765.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 11, 1980.
Decided Feb. 3, 1981.

John C. Loring, Chicago, Ill., for defendant-appellant.

Thomas B. Cassidy, Martin, Craig, Chester & Sonnenschein, Chicago, Ill., for plaintiff-appellee.

Before SPRECHER, BAUER and WOOD, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

This diversity case involves the appeal of defendant Automark Industries, Inc. ("Automark"), a corporation doing business in Illinois, from the district court's determination on motion for summary judgment in favor of plaintiff Hendrik Koster, a citizen of the Netherlands. The district court's decision granted enforcement of a default judgment obtained in district court in Amsterdam by Koster against Automark in a case brought on a claimed breach of contract. Finding that Automark did not have sufficient contact with the Netherlands to vest that country's courts with personal jurisdiction over Automark so as to permit enforcement of the default judgment in United States courts, we reverse.

■ Whether a court may, under American law, assert jurisdiction over a foreign defendant-company depends upon whether the company "purposefully avails itself of the privilege of conducting activities within the forum State." *Shaffer v. Heitner*, 433

U.S. 186, 216, 97 S.Ct. 2569, 2586, 53 L.Ed.2d 683 (1977). This means that the company must pass a threshold of minimum contacts with the forum state so that it is fair to subject it to the jurisdiction of that state's courts. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

■ The parties agree that the document alleged to be Automark's contract to purchase up to 600,000 units of Koster's valve cap gauges was executed in Milan, Italy.[1] The Milan meeting between Koster and Automark followed preliminary inquiry and discussion between the two parties during a period of five months. The discussion was carried on via mail between Koster's Amsterdam office and Automark's Illinois address. Automark began the exchange of letters in June, 1970 with a one-sentence request for "descriptive material and prices" of Koster's product. Automark subsequently expressed interest in marketing the tire gauges, but stated that it needed to know the details of such important factors as Koster's relationship with the Swiss factory that produced the gauges, Koster's present patent rights, and his rights to worldwide distribution of the total output of the Swiss factory. Automark expressly disclaimed willingness to negotiate and conclude a contract through the mail.[2] In ear-

1. There apparently was some disagreement before the district court as to where this document was executed, since it bears the handwritten words "Scope [Koster's company] Amsterdam, Neth." The briefs of both parties on appeal agree that the document was executed in Milan, Italy.

The text of the handwritten document, which serves as the alleged contract, reads as follows: "We agree to purchase up to 600,000 pieces of Amico valve cap gauges bulkpacked from you at $0.11 each C.I.T. N.Y. within the 12 mos. period beginning 1/1/71."

It is signed by Automark's vice-president. It is questionable whether the document represents a valid contract, as it contains no corresponding promise by Koster. In light of our disposition of this case, however, we need not reach the question of the sufficiency of the document to satisfy the prerequisites to a binding contract.

2. Automark's letter to Koster of September 22, 1970 reads in pertinent part as follows:

Anyone who will conclude a major international marketing program by mail is not, in our opinion, worth doing business with and we wonder why you are so anxious to sign up anyone so long as it is done in a matter of days.

If and when we get into a program with you, it will be because we have met you personally and come to a meeting of the minds and because we have subsequently committed major marketing funds and energies to an AMICO program.

If you are interested in a "hit and miss", "catch as catch can" program (unfortunately these are American colloquial expressions but I do not know what to replace them with), then we have no place in your program and you should proceed without us.

ly November, 1970, Automark's vice-president, J. L. Bohmrich, wrote that he would like to meet with Koster in Amsterdam or at the Swiss factory during a European trip Bohmrich planned to take later in the month. Koster replied that he would instead be willing to meet in Milan, and would telephone Bohmrich's Illinois office to make arrangements. As noted, the Milan meeting resulted in execution of the document involved in this case. So far as the record shows, Automark never ordered Koster's gauges, and Koster never shipped any gauges.

The business contacts described above are insufficient to reach the minimum level needed to satisfy due process requirements prerequisite to enforcement of the Dutch default judgment. A recent opinion of this court, *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.*, 597 F.2d 596 (7th Cir. 1979), thoroughly analyzed the due process requirements of minimum contacts in concluding that a federal court sitting in a diversity case arising in Wisconsin did not have personal jurisdiction of a West Virginia defendant. Whether it be Wisconsin or the Netherlands, the standard of minimum contacts is the same. *See generally Somportex Limited v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1971), *cert. denied* 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972). The facts in the *Lakeside* case were similar to those involved here, and if anything, presented a more compelling case for recognizing personal jurisdiction.

In *Lakeside*, the defendant construction company had ordered structural assemblies from plaintiff Lakeside, a Wisconsin company. Several letters and telephone calls had been exchanged between the two businesses, and a contract concluded by mail. The assemblies were delivered, and Lakeside sued when the defendant withheld part of the purchase price. The court assumed that the defendant believed that Lakeside would perform the contract in Wisconsin, the forum state. Focusing on the nature and quality of the contacts between the two companies, the court nevertheless concluded that Wisconsin could not assert jurisdiction

over the West Virginia company because the defendant's Wisconsin contacts did not show that it "purposefully avail[ed] itself of the privilege of conducting activities within the forum state." 597 F.2d at 603.

The document at issue in the case before us was executed in Italy and involved the purchase of goods manufactured in Switzerland. While the document contains language that might be construed as an agreement to pay, which payment Koster claims was to take place in the Netherlands, such a promise even if so interpreted is not sufficient contact to confer personal jurisdiction. *Kulko v. California Superior Court*, 436 U.S. 84, 93 n.6, 98 S.Ct. 1690, 1697, n.6, 56 L.Ed.2d 132 (1978) (child-support payments required under separation agreement to spouse living in California insufficient contact to confer jurisdiction on that state).

In comparison to the facts in the *Lakeside* case, Automark's' *only* contacts with the Netherlands were eight letters, and possibly a telegram and a transatlantic telephone call all preliminary to the meeting in Italy. In *Lakeside,* 597 F.2d at 604, the court notes that such contacts cannot be held to satisfy jurisdictional requirements, otherwise "[u]se of the interstate telephone and mail service to communicate with [an out-of-state] plaintiff, if constituting contacts supporting jurisdiction, would give jurisdiction to any state into which communications were directed." Such a result would make virtually every business subject to suit in any state with which it happened to communicate in some manner. That clearly would not satisfy the demands of due process.

*Lakeside* emphasizes that "the best interests of the international and state systems" of commerce should be considered when making determinations about minimum contacts in individual cases. 597 F.2d at 603, *quoting Restatement (Second) of Conflict of Laws* § 37, Comment *a* (1971). This consideration weighs in favor of Automark, since it "is based on the proposition that '[a] state should not improperly impinge upon the interests of other states by trying in its

courts a case with which it has no adequate relationship.' " 597 F.2d at 603, *quoting Restatement, supra,* § 24, Comment *b.* The Netherlands lacks an adequate relationship to defendant's presence and conduct to justify trial of the case in that country. The interests of international business are better served by protecting potential international purchasers from being unreasonably called to defend suits commenced in foreign courts which lack jurisdiction according to our recognized standards of due process. *See* 597 F.2d at 603 n.12.

Moreover, the *Lakeside* opinion stresses that where the nature of a defendant's business contact in the forum state does not involve activities dangerous to persons and property, the propriety of vesting personal jurisdiction in that state must be considered in light of its relationship with the defendant other than that at issue in the lawsuit. 597 F.2d at 603. The purchase and shipment of valve gauges is not a dangerous activity. And here, there are no allegations that Automark had any relationship with the Netherlands beyond the letters, telegram and telephone call involved in its business contact with Koster.

On these facts, Automark did not have the minimum contacts necessary to show that it purposefully utilized the privilege to conduct business activities in the Netherlands sufficient to confer on that country's courts personal jurisdiction over Automark. The district court concluded that cases decided under the Illinois long-arm statute, Ill.Rev.Stat.Ch. 110, § 17(a), supported his finding that Automark satisfied the requirement of minimum contacts to support the Dutch court's jurisdiction. We disagree. We note that the Illinois courts have held that the state long-arm statute is intended to assert jurisdiction over non-resident defendants only "to the extent permitted by the due process clause." *Colony Press, Inc. v. Fleeman,* 17 Ill.App.3d 14, 19, 308 N.E.2d 78 (1974). The *Lakeside* court's discussion of the application of Wisconsin's long-arm statute to a decision on the basis of federal due process rights is pertinent. The court noted that the Wisconsin law "was intended by the state legislature to

reach only so far as permitted by the due process clause. . . . In these circumstances we are interpreting the statute, not ruling on its constitutionality, when we decide the due process question; yet we are of course not bound by the [state courts'] determination of that federal question". 597 F.2d at 599. Likewise, in the case before us we are not bound by Illinois judicial determinations on the requirements of due process to support personal jurisdiction. This is especially true where we are considering the powers of a court in a jurisdiction other than Illinois.

At any rate, the cases relied upon by the district court for its determination that the Dutch court was vested with personal jurisdiction do not detract from our holding here. Thus, in *Colony Press, supra,* the state court noted that the "essential points" for purposes of its determination that an Ohio corporation was subject to a suit brought in Illinois courts by an Illinois company were that the contract was accepted in Illinois and performance thereunder was expected to occur wholly within that state. 17 Ill.App.3d at 18, 308 N.E.2d 78. As our discussion indicates, the document involved in this case was executed in Italy, and the goods to which it related were to be produced in Switzerland: the Netherlands was not the situs of either activity.

And the other case relied upon by the district judge, *Cook Associates, Inc. v. Colonial Broach & Machine Co.,* 14 Ill.App.3d 965, 304 N.E.2d 27 (1973), dealt with a service contract involving an out-of-state company that had used the services of an Illinois employment agency via a single telephone call. This satisfied the requirements for minimum contacts under the circumstances of that case since "that call was all that was necessary for defendant to achieve its [business] purpose", *i. e.,* obtaining the names of prospective employees. 14 Ill. App.3d at 970, 304 N.E.2d 27. The conclusion and performance of the contract were carried out in Illinois via that telephone call, unlike the situation before us where neither activity occurred in the Netherlands.

Absent personal jurisdiction over Automark in the Dutch case that resulted in a default judgment, the courts of this country lack jurisdiction to enforce the foreign default judgment. The decision of the district court accordingly is reversed and the case is remanded with directions to dismiss the complaint.[3]

**3.** Automark raised another issue which because of our resolution of the case becomes a collateral matter.

Automark contends that the Dutch statute governing service of process on defendants who reside in foreign countries provides insufficient assurances of actual notice to comport with American due process requirements. Absence of personal jurisdiction in the Netherlands courts would prevent a court in this country from enforcing a judgment rendered in the Netherlands. *Hilton v. Guyot*, 159 U.S. 113, 184, 202, 16 S.Ct. 139, 151, 158, 40 L.Ed. 95 (1895). The provisions of the Dutch statute that are pertinent here require that when a foreign defendant is named in a case that will be tried in the Netherlands, process notifying the defendant must be served on the Dutch Department of Foreign Affairs. The Dutch statute, as it appears in the record, contains no provision requiring the Department to follow up by serving notice to the foreign defendant. The issue of service is of particular significance in this case because, although a summons apparently was mailed, Automark insists it never received notice of the Dutch lawsuit and thus was unable to defend its interests in the case that resulted in default.

In a somewhat analogous situation, many states in this country have statutory provisions whereby notice of a lawsuit arising from an automobile accident in the forum state may be served on a non-resident defendant by delivery to the forum state's Secretary of State. Under that procedure, due process requires an additional step. The Secretary in turn must serve notice on the defendant through certified mail or other means reasonably calculated to result in actual notice. *Wuchter v. Pizzutti*, 276 U.S. 13, 19, 48 S.Ct. 259, 260, 72 L.Ed. 446 (1928).

The district court stated, quite correctly, that certified mail, the method used in the case before us, generally is sufficient to fulfill due process requirements regardless of actual notice. While this analysis is fine so far as it goes, it ignores the *Wuchter* conclusion that a statutory provision is not reasonably calculated to provide notice unless its terms relating to the sending of notice are mandatory. Thus, in *Wuchter*, even though the defendant received actual notice of the lawsuit when the forum state's Secretary in fact mailed the summons, "[n]ot having been directed by the statute [actual notice via the Secretary's mailing] cannot, therefore, supply constitutional validity to the statute or to service under it." 276 U.S. at 24, 48 S.Ct. at 262. Here, there is nothing in the Dutch statute that requires the Dutch Department of Foreign Affairs to serve process on a foreign defendant by certified mail or any other reasonable means. That the Department as a matter of practice may exercise its discretion to serve process in some reasonable manner is not dispositive, since "[t]he right of a citizen to due process of law must rest upon a basis more substantial than favor or discretion." *Roller v. Holly*, 176 U.S. 306, 409, 20 S.Ct. 410, 418, 44 L.Ed. 520 (1900). *Compare Boivin v. Talcott*, 102 F.Supp. 979 (N.D.Ohio 1951) (refusing to enforce Canadian default judgment where actual notice but no mandatory form of serving process other than discretion of Canadian court). An affidavit appended to Koster's brief on appeal states that "Dutch law" requires that the Department serve the summons on a defendant once it receives notice of the lawsuit. The conclusory and vague terms of the affidavit render it of no use in dealing with the issue of the statute's requirements, since the affidavit does not say whether the "Dutch law" referred to is delineated in a part of the statute not in the record, is a formal regulation or body of case law, or is an informal matter of practice.

Under these circumstances the Dutch default judgment could not be enforced in our courts.