The **INGERSOLL MILLING MACHINE COMPANY, Plaintiff,**

v.

**J. E. BERNARD & CO., Taiwan International Line, Ltd., and Fireman's Fund Insurance Co., Defendants.**

No. 80 C 3576.

United States District Court,
N. D. Illinois, E. D.

Feb. 24, 1981.

Joseph Keig, Jr., James E. Betke, McDermott, Will & Emery, Chicago, Ill., for plaintiff.

H. Roderic Heard, Wildman, Harrold, Allen & Dixon, Robert Stephens, Bradley, McMurray, Black & Snyder, Jerome Duchowicz, Haskell & Perrin, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff, Ingersoll Milling Machine Company ("Ingersoll"), brought this action against Taiwan International Line, Ltd. ("Taiwan"), J. E. Bernard & Co. ("Bernard"), and Fireman's Fund Insurance Co. seeking recovery for damage to one of its milling machines while on board the M/V Bodena, which was under charter to Taiwan at the time, en route from New Orleans, Louisiana to Pusan, South Korea. The rights and liabilities of the parties are controlled by the Carriage of Goods By Sea Act, 46 U.S.C. §§ 1300–1315, and jurisdiction of this Court is based upon 28 U.S.C. §§ 1333 and 1337.[1] Presently before the

---

1. General federal admiralty jurisdiction is vested in the district courts pursuant to 28 U.S.C. § 1333. Jurisdiction under the Carriage of Goods By Sea Act (COGSA), 46 U.S.C. §§ 1300–1315, is pursuant to 28 U.S.C. § 1337, which provides that "[t]he district courts shall

Court is Taiwan's motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 12(b)(2).

 In federal admiralty practice, personal jurisdiction and venue analyses merge so that venue is proper in any district in which valid service of process may be had on the defendant. *Gipromer v. SS Tempo*, 487 F.Supp. 631, 633 (S.D.N.Y.1980); *Societe Commerciale de Transports Transatlantiques v. SS "African Mercury,"* 366 F.Supp. 1347, 1349 (S.D.N.Y.1973); *Pardonnet v. Flying Tiger Line, Inc.*, 233 F.Supp. 683, 688 (N.D.Ill.1964). *See generally* 1 Moore's Federal Practice ¶ 0.144 [13.1] (2d ed. 1979). Whether a defendant in an admiralty action is properly subject to service of process in a particular district is determined in accordance with the applicable state long-arm statute and principles of due process embodied in the minimum contacts analysis enunciated by the Supreme Court in *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), and its progeny. *McKee v. Brunswick Corporation*, 354 F.2d 577, 580 (7th Cir. 1965). While this Court's due process analysis may be guided by the Illinois courts' interpretations of that state's long-arm statute, *Ill.Rev.Stat.* ch. 110, §§ 16–17 (1979), "we are not bound by the Illinois judicial determinations on the requirements of due process to support personal jurisdiction." *Koster v. Automark Industries, Inc.*, 640 F.2d 77 at 80 (7th Cir. 1981); *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.*, 597 F.2d 596, 599 (7th Cir. 1979).[2]

This is particularly true in an admiralty action since "a state legislature is unlikely to draft its long-arm statute with the typical admiralty case in mind, where the defendant is neither buyer nor seller but merely a carrier having necessarily limited and sporadic contacts with the state." *Gipromer v. SS Tempo*, 487 F.Supp. 631, 634 (S.D.N.Y.1980). Thus, recent decisions have tended towards a liberal construction of a state's long-arm statute in order to obtain personal jurisdiction over a foreign party in admiralty and maritime cases, consistent of course with due process. *See* 7A Moore's Federal Practice ¶ B.06 at B–259 n.27(a) (Supp. 1980–81). Accordingly, although we must determine whether Taiwan was doing business in Illinois within the meaning of the Illinois Long-Arm Statute, *Ill.Rev.Stat.* ch. 110, § 17(1)(a) (1979), our inquiry will be guided by the unique aspects of this international transaction and the custom and practice in the shipping industry.

Taiwan is incorporated under the laws of the National Republic of China (Taiwan) and has its principal offices in Taipei in the National Republic. It does not maintain an office in the United States, but it does employ an agent in New York City, Cathay Pacific Maritime, Inc. ("Cathay"), who handles Taiwan's affairs in this country. In September, 1979, Mr. Michael A. Malarski, president of Gryphon Shipping Services, Inc. ("Gryphon"), an independent cargo brokerage firm with offices in Schiller Park, Illinois,[3] contacted Mr. O. Arnold Larsen, vice-chairman of Cathay, on behalf of In-

have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce...." *See Crispin Company v. Lykes Bros. Steamship Co.*, 134 F.Supp. 704 (S.D.Tex.1955).

**2.** In both *Koster* and *Lakeside* the Seventh Circuit noted that the Illinois courts have manifested an intention to interpret the Illinois long-arm statute to the full extent permitted consistent with principles of due process of law. *Koster*, 640 F.2d at 80; *Lakeside*, 597 F.2d at 599 n.1. *See also Nelson v. Miller*, 11 Ill.2d 378, 143 N.E.2d 673 (1957).

**3.** An independent cargo broker is in the business of facilitating contracts of carriage be-

tween shippers and carriers. He acts variously as an agent for the carrier in procuring contracts of affreightment for a particular vessel, *see Nordstern Allegermeine Vericherungs, A.G. v. M/V Lauriergracht*, No. 79-3840 (S.D.N.Y. Nov. 20, 1980); *Seawind Compania, S. A. v. Crescent Line, Inc.*, 211 F.Supp. 157 (S.D.N.Y. 1962); *The Crystal Stream*, 25 F. 575 (S.D.N.Y. 1885), and as an agent of the shipper in arranging for the carriage of the shipper's cargo to a particular destination. In this latter capacity, the cargo broker acts in much the same way as a traditional freight forwarder in arranging common carriage of the shipper's goods. *See*

gersoll, whose offices are in Rockford, Illinois, in order to arrange carriage for a milling machine Ingersoll wished to have shipped to Hyundai International, Ltd. in Pusan, South Korea. Pursuant to arrangements made either during this initial phone call or during a subsequent confirming call from Cathay to Gryphon, it was agreed that if the milling machine would be transported to New Orleans, Louisiana, it would be loaded aboard the M/V Bodena, a ship under charter to Taiwan bound for South Korea. Gryphon then contacted Bernard, a freight forwarder with offices in Illinois, who arranged the passage to New Orleans where the machine was loaded aboard the Bodena "on deck shippers risk." A bill of lading evidencing the contract of carriage and stamped in the upper left-hand corner "Taiwan International, Ltd.," was filled out

by either Bernard or Gryphon in Illinois. During the voyage from New Orleans to Pusan, the milling machine was damaged and Ingersoll now seeks to hold Taiwan liable for the damage incurred.

■ In opposition to Taiwan's motion to dismiss, Ingersoll maintains that Taiwan's contacts with Illinois in connection with this transaction are sufficient to satisfy the minimum contacts requirements of *International Shoe*.[4] Ingersoll claims that: (1) Taiwan paid Gryphon a standard commission for services rendered on its behalf in Illinois in connection with this transaction;[5] (2) Taiwan provided Gryphon and Bernard with blank bills of lading stamped with Taiwan's name which were completed in Illinois;[6] (3) Taiwan advertised and solicited business in Illinois through *The Journal*

---

*Chicago, Milwaukee, St. Paul & Pacific R. R. Co. v. Acme Fast Freight, Inc.*, 336 U.S. 465, 484–85, 69 S.Ct. 692, 701, 93 L.Ed. 817 (1949); *Aquascutum of London, Inc. v. S/S American Champion*, 426 F.2d 205, 209–10 (2d Cir. 1970); *Mediterranean Marine Lines, Inc. v. John T. Clark & Son of Maryland, Inc.*, 485 F.Supp. 1330, 1340 (D.Md.1980); *Tarstar Shipping Co. v. Century Shipline, Ltd.*, 451 F.Supp. 317 (S.D. N.Y.1978), *affirmed*, 597 F.2d 837 (2d Cir. 1979). In the case at bar, the parties dispute whether Gryphon, the cargo broker, acted as the agent of the shipper, Ingersoll, or the carrier, Taiwan, or in some sort of dual capacity.

4. In the alternative, Ingersoll maintains that in order for this Court to assert in personam jurisdiction over a foreign defendant, such as Taiwan, the only requirement is that the defendant have certain minimum contacts with the United States as a whole. This so-called "national contacts" approach has been used by some courts in federal question cases on the theory that a foreign corporation that does some business in this country but has insufficient contacts with any particular state to meet the *International Shoe* minimum contacts requirements would not be unduly inconvenienced by defending in one United States forum rather than another. Furthermore, it is said that a foreign corporation that has availed itself of the economic benefits of this country without creating sufficient contact with any one state to give that state jurisdiction under traditional personal jurisdiction concepts would be able to commit wrongs with impunity and not be haled into any particular forum to answer for its misdeeds without the broader "national contacts" theory. *See, e. g., DeJames v. Magnificence Carriers, Inc.*, 491 F.Supp. 1276 (D.N.J.

1980); *Centronics Data Computer Corporation v. Mannesmann, A.G.*, 432 F.Supp. 659 (D.N.H. 1977); *Cryomedics, Inc. v. Spembly, Limited*, 397 F.Supp. 287 (D.Conn.1975); *Holt v. Klosters Rederi A/S*, 355 F.Supp. 354 (W.D.Mich. 1973). Of the two courts of appeals that have considered the national contacts approach, the United States Court of Appeals for the Ninth Circuit rejected it in *Wells Fargo & Company v. Wells Fargo Express Company*, 556 F.2d 406 (9th Cir. 1977), and the United States Court of Appeals for the Seventh Circuit expressly declined to adopt such a broad position in *Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137 (7th Cir. 1975). This Court also declines to adopt such a broad approach, and we note that this circuit has implicitly held the traditional *International Shoe* due process analysis applicable to cases brought under the admiralty jurisdiction of the federal courts. *See McKee v. Brunswick Corporation*, 354 F.2d 577 (7th Cir. 1965). *See also E. Walters & Company, Inc. v. Interastra, S.A.*, 67 F.R.D. 410 (N.D. Ill.1975). *But see Coats Company, Inc. v. Vulcan Equipment Company, Ltd.*, 459 F.Supp. 654 (N.D.Ill.1978).

5. *See* Malarski Affidavit at ¶ 13:

 For the aforementioned services which I performed as representative of Taiwan with respect to Ingersoll's cargo, I was paid a standard commission.

6. *See* Malarski Affidavit at ¶ 10:

 . . . As a representative of the shipping lines, Taiwan, I had been provided by Cathay with bill of lading forms bearing the caption "Taiwan International Lines, Ltd."

*of Commerce*, a national trade publication;[7] and (4) Cathay, on Taiwan's behalf, placed a confirmatory phone call to Gryphon in Illinois in connection with the transaction in the instant case.[8] Taiwan vehemently denies any agency relationship whatsoever between itself and Gryphon,[9] although it does not specifically deny that Gryphon was paid a standard commission for services rendered. According to Taiwan, Gryphon's role as an international shipping broker was as agent for the shipper, in this case Ingersoll, not as agent for the carrier, Taiwan. Taiwan also denies that it or Cathay on its behalf sent any communication into Illinois for the purpose of soliciting business in that state from Gryphon or other brokers.[10] It also disputes the phone call allegedly placed by Cathay to Gryphon, stating rather that all the arrangements concerning the instant transaction were made during Gryphon's initial call to Cathay in New York City. Taiwan does admit, however, that the bill of lading completed by either Gryphon or Bernard was on Taiwan's form, but it denies the implication drawn from this fact by Ingersoll.[11]

◼ The party asserting the existence of in personam jurisdiction has the burden of proving the necessary jurisdictional facts if jurisdiction is challenged. *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183 (1936). The existence of jurisdiction need not be proven by a preponderance of the evidence; the burden is satisfied by a *prima facie* showing that in personam jurisdiction exists. *O'Hare International Bank v. Hampton*, 437 F.2d 1173, 1176 (7th Cir. 1971); *Atlantic Lines, Ltd. v. M/V Domburgh*, 473 F.Supp. 700, 703 (S.D. Fla.1979). Any conflicting claims regarding the existence of jurisdiction must be resolved in favor of the party opposing the motion to dismiss. *Met-L-Wood Corporation v. Lifetime Pools, Inc.*, 475 F.Supp. 149, 151 (N.D.Ill.1979); *Cohan v. Municipal Leasing Systems, Inc.*, 379 F.Supp. 1022, 1026 (N.D.Ill.1974). In the case at bar, however, even if we acknowledge the undisputed facts and resolve all conflicts in Ingersoll's favor, we would still be unable to conclude that this Court has in personam jurisdiction over Taiwan.

I.

◼ Ingersoll maintains that Gryphon was Taiwan's "representative" in Illinois; carefully avoiding characterizing the relationship in terms of a legal "agency." The thrust of Ingersoll's agreement, however, clearly is to cast Gryphon as Taiwan's agent in order for this Court to assert jurisdiction over Taiwan as principal. The existence of an agency relationship rests on objective facts and the party asserting such a relationship has the burden of proving the assertion by more than the "self-serving statements" of the purported agent. *Tarstar Shipping Company v. Century Shipping, Ltd.*, 451 F.Supp. 317, 323 (S.D.N.Y.1978), *affirmed*, 597 F.2d 837 (2d Cir. 1979). As

---

7. *See* Malarski Affidavit at ¶ 3:

 Taiwan, through its general agent in the United States, [Cathay], solicited the cargo brokerage services of Gryphon by, among other things, advertising in *The Journal of Commerce*, a daily transportation and world trade Publication [sic] circulating to, among others, cargo brokers.

8. *See* Malarski Affidavit at ¶ 8:

 Sometime after my initial conversation with Larsen [vice-chairman of Cathay], I received a telephone call from Larsen, wherein he indicated that the booking on Taiwan was confirmed. . . .

9. *See* Larsen Affidavit at ¶ 3:

 Neither Michael Molarski nor Messrs. Gryphon Shipping Services, Inc. are agents or in any way affiliated with Cathay or Taiwan, and Molarski and Messrs. Gryphon were not acting on behalf of Cathay or Taiwan at any time during the events described in this affidavit.

10. *See* Larsen Affidavit at ¶¶ 8, 9:

 Neither Cathay, Taiwan nor its agents sent any communication into the State of Illinois regarding this shipment nor did they in any way solicit this business. . . .
 Neither Cathay, Taiwan nor any of their agents or affiliates have an agent or office in the State of Illinois; nor do they transact any business there or actively solicit business in the State of Illinois.

11. *See* Reply to Plaintiff's Response to Taiwan International Line, Ltd.'s Motion to Dismiss at 7.

the court noted in *Interocean Shipping Co. v. National Shipping and Trading Corporation*, 523 F.2d 527, 537 (2d Cir. 1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976), "[a]gency is a legal concept which depends on the manifest conduct of the parties, not on their intentions or beliefs as to what they have done." The key element of an agency relationship is the principal's right to control the activities supposedly acting on his behalf. *See Oberlin v. Marlin American Corporation*, 596 F.2d 1322, 1326 (7th Cir. 1979); *B & W Wholesale Co., Inc. v. United States*, 436 F.2d 1399, 1401–02, 58 CCPA 92 (1971); Restatement (Second) of Agency § 14.

In the case at bar, Ingersoll initially contacted Gryphon who then contacted Cathay, admittedly Taiwan's New York agent. If Gryphon was subject to anyone's control with regard to this transaction, it was more likely subject to the control of Ingersoll since Gryphon's actions were motivated by a desire to effect the intentions of the shipper in transporting its cargo to a particular destination. If Taiwan had been unable to provide a vessel to transport Ingersoll's milling machine to Pusan within the desired time period, Gryphon would probably have contacted another carrier who could have done the job. The carrier's payment of a commission or fee to the broker or freight forwarder does not necessarily change the fact that the broker or forwarder has acted primarily on behalf of the shipper. As the Court said in *Bartlett-Collins Company v. Surinam Navigation Company*, 381 F.2d 546, 550 (10th Cir. 1967), in circumstances similar to those in the instant case:

> To be sure the authorization of a brokerage fee is some evidence of the requisite right of control; but in itself it certainly does not establish that the forwarder was the carrier's agent as a matter of law, nor does it do so when considered in connection with the other established facts of this case.

Accordingly, Ingersoll has not made out a *prima facie* case that Gryphon was acting as Taiwan's agent in Illinois for purposes of asserting in personam jurisdiction over Taiwan as principal.

## II.

Even if we accept as fact that Taiwan paid Gryphon a standard brokerage fee or commission; that Taiwan or Cathay sent blank bills of lading bearing the caption "Taiwan International Line, Ltd." to Gryphon which were filled out by either Gryphon or Bernard in Illinois; that Taiwan advertised in *The Journal of Commerce* which was distributed in Illinois; and that Cathay, as Taiwan's agent, placed a phone call to Gryphon in Illinois, it cannot be said that Taiwan, by these acts, has "purposefully avail[ed] itself of the privilege of conducting activities within [Illinois]" within the meaning of the minimum contacts requirements of due process. *Shaffer v. Heitner*, 433 U.S. 186, 216, 97 S.Ct. 2569, 2586, 53 L.Ed.2d 683 (1977).

The mere act of sending payment to an Illinois company does not suffice to confer personal jurisdiction over a foreign party. *Met-L-Wood Corporation v. Lifetime Pools, Inc.*, 475 F.Supp. 149, 151 (W.D.Ill. 1979). Each transaction must be viewed "in a realistic commercial light" and the sending of blank contracts or commissions to persons in the forum state is not necessarily sufficient to require the out-of-state party to defend an action brought in that forum. *Mulhern v. Holland America Cruises*, 393 F.Supp. 1298, 1302 (D.N.H.1975). In the case at bar, Gryphon's activities in Illinois with regard to Taiwan were more akin to those of an independent contractor than an agent, as noted in section I of this opinion, and as Professors Wright and Miller have noted, "if the corporation's business in the state is conducted by independent contractors with only limited power to act on behalf of the corporation, then the corporation probably will not be held to be doing business in the state." 4 Wright and Miller, Federal Practice and Procedure § 1069 at p. 252 (1969) (citations omitted). Similarly, directing a single telephone call to an Illinois party is insufficient to vest this Court with personal jurisdiction over the caller, *Lakeside Bridge & Steel Co. v. Mountain*

*State Construction Co., Inc.*, 597 F.2d 596, 604 (7th Cir. 1979); *McBreen v. Beech Aircraft Corp.*, 543 F.2d 26 (7th Cir. 1976), and advertisements in a national publication that happens to be circulated in the forum have also been held to be insufficient to confer jurisdiction over the advertiser. *Safari Outfitters, Inc. v. Superior Court*, 167 Colo. 456, 448 P.2d 783 (1969). *See also Insull v. New York World-Telegram Corp.*, 273 F.2d 166, 169–71 (7th Cir. 1959).

Ingersoll places heavy reliance upon *Med-Span Shipping Services, Ltd. v. Jerry Jones Mack, Inc.*, 442 F.Supp. 904 (S.D.N.Y.1978), for the proposition that the execution of the bill of lading in Illinois might be sufficient in and of itself to validate the exercise of jurisdiction over Taiwan. However, in *Med-Span*, unlike the case at bar, the parties agreed that the freight forwarder who filled out the bill of lading in the forum state was acting as the out-of-state carrier's agent. Thus, the court noted that "the existence of an agency is thus conceded, and we need not address the difficult questions surrounding the imputation of agency for jurisdictional purposes." 442 F.Supp. at 904, 905 n.1. In the instant case, the execution of the bill of lading in Illinois is not sufficient by itself or in conjunction with the other factors asserted by Ingersoll to subject Taiwan to the jurisdiction of this Court.

Accordingly, Taiwan's motion to dismiss for lack of personal jurisdiction is granted. It is so ordered.[12]

---

12. None of the parties herein has moved for a change of venue to a more appropriate forum pursuant to 28 U.S.C. § 1404. From the memoranda and affidavits filed by the parties in connection with the pending motion to dismiss, it would appear that the United States District Court for the Eastern District of Louisiana would be a likely forum in which to pursue this action against all the named defendants. If that is in fact the case, this Court would entertain an appropriate motion to transfer.